Orlando Villalba (SBN 232165)
Orlando.Villalba@capstonelawyers.com
Helga Hakimi (SBN 257381)
Helga.Hakimi@capstonelawyers.com
Tyler Anderson (SBN 301808)
Tyler.Anderson@capstonelawyers.com
Jeffrey Jimenez (SBN 338228)
Jeff.Jimenez@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1860
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:    (310) 943-0396

Attorneys for Plaintiff Rosario Ortiz

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSARIO ORTIZ, individually, and on behalf of other members of the general public similarly situated, and as an aggrieved employee pursuant to the Private Attorneys General Act ("PAGA"),<br><br>Plaintiff,<br><br>vs.<br><br>HAWTHORN SENIOR LIVING, LLC, a Delaware limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 2:25-cv-03045-DAD-SCR<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT & ENFORCEMENT ACTION UNDER THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE §§ 2698, *ET SEQ.***<br><br>(1) Violation of California Labor Code §§ 510 and 1198 (Unpaid Overtime);<br>(2) Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 (Unpaid Minimum Wages);<br>(3) Violation of California Labor Code §§ 226.7, 512(a), 516, and 1198 (Failure to Provide Meal Periods);<br>(4) Violation of California Labor Code §§ 226.7, 516, and 1198 (Failure to Authorize and Permit Rest Periods);<br>(5) Violation of California Labor Code §§ 226(a), 1174(d), and 1198 (Non-Compliant Wage Statements and Failure to Maintain Payroll Records);<br>(6) Violation of California Labor Code §§ 201 and 202 (Wages Not Timely Paid Upon Termination);<br>(7) Violation of California Labor Code § 204 (Failure to Timely Pay Wages During Employment);<br>(8) Violation of California Labor Code § 2802 (Unreimbursed Business Expenses); |

(9) Civil Penalties for Violations of California Labor Code, Pursuant to PAGA, §§ 2698, *et seq.*;

(10)    Violation of California Business & Professions Code §§ 17200, *et seq.* (Unlawful Business Practices); and

(11)    Violation of California Business & Professions Code §§ 17200, *et seq.* (Unfair Business Practices)

**Jury Trial Demanded**

Plaintiff Rosario Ortiz, individually and on behalf of all other members of the public similarly situated, and as an aggrieved employee and on behalf of all aggrieved employees, alleges as follows:

### JURISDICTION AND VENUE

1.      This class action is brought pursuant to Rule 23 of the Federal Rules of Civil Procedure to recover wages and all other available relief on behalf of Plaintiff and all similarly situated current and former non-exempt, hourly paid employees of Defendants, and non-class representative enforcement action brought pursuant to the Private Attorneys General Act of 2004, California Labor Code sections 2698, *et seq.* ("PAGA") to recover civil penalties and any other available relief on behalf of Plaintiff, the State of California, and other current and former employees who worked for Defendants in California as non-exempt, hourly paid employees and received at least one wage statement and against whom one or more violations of any provision in Division 2 Part 2 Chapter 1 of the Labor Code or any provision regulating hours and days of work in the applicable Industrial Welfare Commission ("IWC") Wage Order were committed, as set forth in this complaint.

2.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) and based on 28 U.S.C. §§ 1441, 1446.

3.      Venue is proper in this Court, because this case was originally filed in the Superior Court of California for the County of Sacramento.  Venue properly lies in the United States District Court for the Eastern District of California pursuant to 28 U.S.C. §§ 84(a), 1391(b), and 1441(a).

4.      The PAGA statute authorizes aggrieved employees to sue directly as the proxy of the State of California for civil penalties for violations of various provisions in the California Labor Code

### THE PARTIES

5.      Plaintiff Rosario Ortiz is a resident of Los Angeles, in Los Angeles County, California.  Defendants employed Plaintiff as an hourly paid, non-exempt employee from approximately September 2021 to May 2025.  Plaintiff worked for Defendants as a

FIRST AMENDED CLASS ACTION COMPLAINT

Housekeeper and Server at Defendants' Scholl Canyon Estates senior living community location in Glendale, California. During her employment, Plaintiff typically worked eight (8) hours or more per day and five (5) days per week. Plaintiff's primary job duties included, without limitation, serving meals to residents, cleaning the dining area, and performing housekeeping of residences.

6.    HAWTHORN SENIOR LIVING, LLC was and is, upon information and belief, a Delaware limited liability company, and at all times hereinafter mentioned, an employer whose employees are engaged throughout this county and the State of California.

7.    Plaintiff is unaware of the true names or capacities of the Defendants sued herein under the fictitious names DOES 1 through 10, but will seek leave of this Court to amend the complaint and serve such fictitiously named Defendants once their names and capacities become known.

8.    Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10 were the partners, agents, owners, or managers of HAWTHORN SENIOR LIVING, LLC, at all relevant times.

9.    Plaintiff is informed and believes, and thereon alleges, that each and all of the acts and omissions alleged herein was performed by, or is attributable to HAWTHORN SENIOR LIVING, LLC and/or DOES 1 through 10 (collectively, "Defendants" or "HAWTHORN"), each acting as the agent, employee, alter ego, and/or joint venturer of, or working in concert with, each of the other co-Defendants and was acting within the course and scope of such agency, employment, joint venture, or concerted activity with legal authority to act on the others' behalf. The acts of any and all Defendants were in accordance with, and represent, the official policy of Defendants.

10.    At all relevant times, Defendants, and each of them, ratified each and every act or omission complained of herein. At all relevant times, Defendants, and each of them, aided and abetted the acts and omissions of each and all the other Defendants in proximately causing the damages herein alleged.

11.    Plaintiff is informed and believes, and thereon alleges, that each of said

FIRST AMENDED CLASS ACTION COMPLAINT

Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions alleged herein.

**GENERAL ALLEGATIONS**

12. Defendants are a senior housing management company with over 70 independent and assisted living communities, with six (6) facilities in California. Upon information and belief, Defendants maintain a single, centralized Human Resources ("HR") department at their company headquarters in Vancouver, Washington, which is responsible for the recruiting and hiring of new employees, and communicating and implementing Defendants' company-wide policies, including timekeeping policies and meal and/or rest period policies, to employees throughout California.

13. In particular, Plaintiff and class members, on information and belief, received the same standardized documents and/or written policies. Upon information and belief, the usage of standardized documents and/or written policies, including new-hire documents, indicate that Defendants dictated policies at the corporate level and implemented them company-wide, regardless of their employees' assigned locations or positions. Upon information and belief, Defendants set forth uniform policies and procedures in several documents provided at an employee's time of hire.

14. Upon information and belief, Defendants maintain a centralized Payroll department at their company headquarters in Vancouver, Washington, which processes payroll for all non-exempt, hourly paid employees working for Defendants at their various locations in California, including Plaintiff and class members. Based upon information and belief, Defendants issue the same formatted wage statements to all non-exempt, hourly paid employees in California, irrespective of their work locations. Upon information and belief, Defendants process payroll for departing employees in the same manner throughout the State of California, regardless of the manner in which each employee's employment ends.

15. Defendants continue to employ non-exempt or hourly paid employees in California.

16. Plaintiff is informed and believes, and thereon alleges, that at all times herein

Page 3

FIRST AMENDED CLASS ACTION COMPLAINT

mentioned, Defendants were advised by skilled lawyers and other professionals, employees and advisors knowledgeable about California labor and wage law, employment and personnel practices, and about the requirements of California law.

17.     Plaintiff is informed and believes, and thereon alleges, that Plaintiff and class members were not paid for all hours worked because all hours worked were not recorded.

18.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive certain wages for overtime compensation and that they were not receiving certain wages for overtime compensation.

19.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive at least minimum wages for compensation and that they were not receiving at least minimum wages for work that was required to be done off-the-clock.  In violation of the California Labor Code, Plaintiff and class members were not paid at least minimum wages for work done off-the-clock.

20.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to meal periods in accordance with the California Labor Code and applicable IWC Wage Order or payment of one (1) additional hour of pay at their regular rates of pay when they were not provided with timely, uninterrupted, thirty (30) minute meal periods and that Plaintiff and class members were not provided with all meal periods or payment of one (1) additional hour of pay at their regular rates of pay when they did not receive a timely, uninterrupted, thirty (30) minute meal period.

21.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to rest periods in accordance with the California Labor Code and applicable IWC Wage Order or payment of one (1) additional hour of pay at their regular rates of pay when they were not authorized and permitted to take a compliant rest period and that Plaintiff and class members were not authorized and permitted to take compliant rest periods or provided with payment of one (1)

FIRST AMENDED CLASS ACTION COMPLAINT

additional hour of pay at their regular rates of pay when they were not authorized and permitted to take a compliant rest period.

22.   Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive complete and accurate wage statements in accordance with California law.  In violation of the California Labor Code, Plaintiff and class members were not provided complete and accurate wage statements.

23.   Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that they had a duty to maintain accurate and complete payroll records in accordance with the California Labor Code and applicable IWC Wage Order, but willfully, knowingly, and intentionally failed to do so.

24.   Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to timely payment of all wages earned upon termination of employment.  In violation of the California Labor Code, Plaintiff and class members did not receive payment of all wages due, including, but not limited to, overtime wages, minimum wages, and/or meal and rest period premiums, within permissible time periods.

25.   Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to timely payment of wages during their employment.  In violation of the California Labor Code, Plaintiff and class members did not receive payment of all wages, including, but not limited to, overtime wages, minimum wages, and/or meal and rest period premiums, within permissible time periods.

26.   Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive full reimbursement for all business-related expenses and costs they incurred during the course and scope of their employment and that they did not receive full reimbursement of applicable business-related expenses and costs incurred.

27.   Plaintiff is informed and believes, and thereon alleges, that at all times herein

mentioned, Defendants knew or should have known that Defendants had a duty to provide Plaintiff and class members with written notice of the material terms of their employment with Defendants as required by the California Wage Theft Prevention Act, but failed to do so.

28.     Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants knew or should have known that they had a duty to compensate Plaintiff and class members for all hours worked, and that Defendants had the financial ability to pay such compensation, but willfully, knowingly, and intentionally failed to do so, and falsely represented to Plaintiff and class members that they were properly denied wages, all in order to increase Defendants' profits.

<strong>PAGA REPRESENTATIVE ALLEGATIONS</strong>

29.     At all times herein set forth, PAGA provides that any provision of law under the Labor Code and applicable IWC Wage Order that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency ("LWDA") for violations of the California Labor Code and applicable IWC Wage Order may, as an alternative, be recovered by aggrieved employees in a civil action brought on behalf of themselves and other current or former employees pursuant to procedures outlined in California Labor Code section 2699.3.

30.     PAGA defines an "aggrieved employee" in Labor Code section 2699(c)(1) as "any person who was employed by the alleged violator and personally suffered each of the violations alleged."

31.     Plaintiff and other current and former employees of Defendants are "aggrieved employees" as defined by Labor Code section 2699(c)(1) in that they are all Defendants' current or former employees and each of the alleged violations were committed against them.

32.     Pursuant to California Labor Code sections 2699.3 and 2699.5, an aggrieved employee, including Plaintiff, may pursue a civil action arising under PAGA after the following requirements have been met:

(a)     The aggrieved employee or representative shall give written notice by online filing with the LWDA and by certified mail to the employer of

Page 6

the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violation.

(b) An aggrieved employee's notice filed with the LWDA pursuant to 2699.3(a) and any employer response to that notice shall be accompanied by a filing fee of seventy-five dollars ($75).

(c) The LWDA shall notify the employer and the aggrieved employee or representative by certified mail that it does not intend to investigate the alleged violation ("LWDA Notice") within sixty (60) calendar days of the postmark date of the aggrieved employee's notice.  Upon receipt of the LWDA Notice, or if no LWDA Notice is provided within sixty-five (65) calendar days of the postmark date of the aggrieved employee's notice, the aggrieved employee may commence a civil action pursuant to California Labor Code section 2699 to recover civil penalties.

33.    Pursuant to California Labor Code sections 2699.3(c), aggrieved employees, through Plaintiff, may pursue a civil action arising under PAGA for violations of any provision other than those listed in Section 2699.5 after the following requirements have been met:

(a) The aggrieved employee or representative shall give written notice by online filing with the LWDA and by certified mail to the employer of the specific provisions of the California Labor Code alleged to have been violated (other than those listed in Section 2699.5), including the facts and theories to support the alleged violation.

(b) An aggrieved employee's notice filed with the LWDA pursuant to 2699.3(c) and any employer response to that notice shall be accompanied by a filing fee of seventy-five dollars ($75).

(c) The employer may cure the alleged violation within thirty-three (33) calendar days of the postmark date of the notice sent by the aggrieved

Page 7

employee or representative.  The employer shall give written notice within that period of time by certified mail to the aggrieved employee or representative and by online filing with the LWDA if the alleged violation is cured, including a description of actions taken, and no civil action pursuant to Section 2699 may commence.  If the alleged violation is not cured within the 33-day period, the aggrieved employee may commence a civil action pursuant to Section 2699.

34.  On August 13, 2025, Plaintiff provided written notice by online filing to the LWDA and by Certified Mail to Defendants of the specific provisions of the California Labor Code alleged to have been violated, including facts and theories to support the alleged violations, in accordance with California Labor Code section 2699.3.  Plaintiff's written notice was accompanied with the applicable filing fee of seventy-five dollars ($75).  The LWDA PAGA Administrator confirmed receipt of Plaintiff's written notice and assigned Plaintiff PAGA Case Number LWDA-CM-11825-25.  On June 12, 2026, Plaintiff sent an amended written notice by online filing to the LWDA and by certified mail to Defendants of the specific provisions of the California Labor Code alleged to have been violated, supplementing and clarifying the facts and theories to support the alleged violations set forth in her original LWDA notice and added additional claims, in accordance with California Labor Code section 2699.3.  True and correct copies of Plaintiff's written notices to the LWDA and Defendants are attached hereto as "Exhibit 1."

35.  As of the filing date of this amended complaint, over 65 days have passed since Plaintiff sent the initial notice described above to the LWDA, and the LWDA has not responded that it intends to investigate Plaintiff's claims and Defendants have not cured the violations.

36.  Thus, Plaintiff has satisfied the administrative prerequisites under California Labor Code sections 2699.3(a) and 2699.3(c) to recover civil penalties against Defendants for violations of California Labor Code sections 201, 202, 204, 226(a), 226.7, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, and 2810.5.

FIRST AMENDED CLASS ACTION COMPLAINT

37. Labor Code section 558(a) provides "[a]ny employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid . . . . (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid . . . ." Labor Code section 558(c) provides "[t]he civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law."

38. Defendants, at all times relevant to this complaint, were employers or persons acting on behalf of an employer(s) who violated Plaintiff's and other aggrieved employees' rights by violating various sections of the California Labor Code as set forth above.

39. As set forth below, Defendants have violated numerous provisions of both the Labor Code sections regulating hours and days of work as well as the applicable IWC Wage Order.

40. Pursuant to PAGA, and in particular, California Labor Code sections 1194.5. 2699(a), 2699(k), 2699.3(a), 2699.3(c), 2699.5, and section 558, Plaintiff, acting in the public interest as a private attorney general, seeks assessment and collection of civil penalties and injunctive relief for herself, all other aggrieved employees, and the State of California against Defendants for violations of California Labor Code sections 201, 202, 204, 226(a), 226.7, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, and 2810.5.

**CLASS ACTION ALLEGATIONS**

41. Plaintiff brings this action on her own behalf, as well as on behalf of each and all other persons similarly situated, and thus seeks class certification under Rule 23 of the Federal Rules of Civil Procedure.

42. All claims alleged herein arise under California law for which Plaintiff seeks relief authorized by California law.

43. Plaintiff's proposed class consists of and is defined as follows:

FIRST AMENDED CLASS ACTION COMPLAINT

All persons who worked for Defendants as non-exempt, hourly paid employees in California, at any time from July 2, 2022, until the date of trial ("Class").

44.     Plaintiff's proposed subclass consists of and is defined as follows:

All persons who worked for Defendants as non-exempt, hourly paid employees in California and who received at least one wage statement within one (1) year prior to the filing of the initial complaint until the date of trial ("Subclass").

45.     Members of the Class and Subclass are referred to herein as "class members."

46.     Plaintiff reserves the right to redefine the Class and Subclass and to add additional subclasses as appropriate based on further investigation, discovery, and specific theories of liability.

47.     This action is brought and properly may be maintained as a class action pursuant to the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1), (b)(2), or (b)(3) and satisfies the requirements thereof.

48.     According to Defendants' removal papers, there are approximately 550 non-exempt employees who worked for Defendants across California during the relevant period. Thus, it is reasonable to presume that the members of the class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

49.     Plaintiff's claims are typical of those of the class members, because Plaintiff suffered the violations set forth in this First Amended Complaint.

50.     Plaintiff will adequately protect the interests of class members.  Plaintiff has no interests that are adverse to or conflict with class members and is committed to the vigorous prosecution of this action.  To that end, Plaintiff has retained counsel who is competent and experienced in handling class actions on behalf of employees.

51.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the amount suffered by individual class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually

redress the wrongs done to them.  There will be no difficulty in the management of this case as a class action.

52.　There are common questions of law and fact as to class members that predominate over questions affecting only individual members, including, but not limited to:

(a)　Whether Defendants required Plaintiff and class members to work over eight (8) hours per day, over twelve (12) hours per day, or over forty (40) hours per week and failed to pay all legally required overtime compensation to Plaintiff and class members;

(b)　Whether Defendants failed to pay Plaintiff and class members at least minimum wages for all hours worked;

(c)　Whether Defendants failed to provide Plaintiff and class members with meal periods;

(d)　Whether Defendants failed to authorize and permit Plaintiff and class members to take rest periods;

(e)　Whether Defendants provided Plaintiff and Subclass members with complete and accurate wage statements as required by California Labor Code section 226(a);

(f)　Whether Defendants maintained accurate payroll records as required by California Labor Code section 1174(d);

(g)　Whether Defendants failed to pay earned overtime wages, minimum wages, and/or meal and rest period premiums due to Plaintiff and class members upon their discharge;

(h)　Whether Defendants failed timely to pay overtime wages, minimum wages, and/or meal and rest period premiums due to Plaintiff and class members during their employment;

(i)　Whether Defendants failed to reimburse Plaintiff and class members for necessary and required business-related expenditures and/or losses incurred by them in the scope of their employment;

FIRST AMENDED CLASS ACTION COMPLAINT

(j)     Whether Defendants failed to provide written notice of information material to Plaintiff's and class members' employment with Defendants;

(k)     Whether Defendants engaged in unlawful and unfair business practices in violation of California Business & Professions Code sections 17200, *et seq.*; and

(l)     The appropriate amount of damages, restitution, or monetary penalties resulting from Defendants' violations of California law.

## FIRST CAUSE OF ACTION

## Violation of California Labor Code §§ 510 and 1198—Unpaid Overtime

## (Against all Defendants)

53.     Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

54.     Labor Code section 1198 makes it illegal to employ an employee under conditions of labor that are prohibited by the applicable IWC Wage Order.  California Labor Code section 1198 requires that ". . . the standard conditions of labor fixed by the commission shall be the . . . standard conditions of labor for employees.  The employment of any employee . . . under conditions of labor prohibited by the order is unlawful."

55.     California Labor Code section 1198 and the applicable IWC Wage Order provide that it is unlawful to employ persons without compensating them at a rate of pay either time-and-one-half or two-times that person's regular rate of pay, depending on the number of hours worked by the person on a daily or weekly basis.

56.     Specifically, the applicable IWC Wage Order provides that Defendants are and were required to pay Plaintiff and class members working more than eight (8) hours in a day or more than forty (40) hours in a workweek, at the rate of time and one-half (1 ½) for all hours worked in excess of eight (8) hours in a day or more than forty (40) hours in a workweek.

57.     The applicable IWC Wage Order further provides that Defendants are and were required to pay Plaintiff and class members working more than twelve (12) hours in a day,

Page 12

overtime compensation at a rate of two (2) times their regular rate of pay.  An employee's regular rate of pay includes all remuneration for employment paid to, or on behalf of, the employee, including nondiscretionary bonuses and incentive pay.

58.　California Labor Code section 510 codifies the right to overtime compensation at one and one-half (1 ½) times the regular rate of pay for hours worked in excess of eight (8) hours in a day or forty (40) hours in a week or for the first eight (8) hours worked on the seventh (7th) day of work, and to overtime compensation at twice the employee's regular rate of pay for hours worked in excess of twelve (12) hours in a day or in excess of eight (8) hours in a day on the seventh (7th) day of work.

59.　During the relevant time period, Defendants willfully failed to pay all overtime wages owed to Plaintiff and class members.  During the relevant time period, Plaintiff and class members were not paid overtime premiums for all of the hours they worked in excess of eight (8) hours in a day, in excess of twelve (12) hours in a day, and/or in excess of forty (40) hours in a week, because all hours worked were not recorded.

60.　First, during the relevant time period, Defendants had, and continue to have, a company-wide policy and/or practice of discouraging and impeding Plaintiff and class members from recording hours worked that were outside of their scheduled shifts in order to limit the amount of overtime employees could accrue.  Specifically, Defendants' management pressured Plaintiff and class members to record their scheduled shift start-times and shift end-times instead of their actual hours worked to limit the overtime hours employees were eligible to be compensated for.  This policy of limiting overtime led Plaintiff and class members to work off-the-clock before and after their scheduled shifts in order to complete their assigned tasks.  For example, Plaintiff and class members were required to change into and/or don their uniform items, which included specific uniform sets used for different assigned tasks (such as a uniform set for serving meals to residents and a different uniform set for housekeeping activities), on Defendants' premises, before clocking in at the start of their shifts.  As another example, after clocking out at the end of their shifts, Plaintiff and class members were required to change out of and/or doff their uniform items, and drop them off in a designated

FIRST AMENDED CLASS ACTION COMPLAINT

area before they could go home for the day.  However, Defendants did not allow Plaintiff and class members to report all of the time spent donning and doffing their uniforms at the beginning and end of their shifts despite being on Defendants' premises and under Defendants' control.  As a result, Plaintiff and class members were required to spend time donning and doffing their uniforms off-the-clock.

61.     Second, Defendants had, and continue to have, a company-wide policy and/or practice of understaffing their facilities.  Defendants' uniform practice of understaffing resulted in a failure to provide Plaintiff and class members with adequate meal period coverage, because there were too few employees on duty to handle the workload and attend to residents, which included strictly adhering to residents' scheduled meals.  Because Defendants did not employ or staff a sufficient number of employees to handle the workload, there was no one available to relieve employees needing meal period coverage and thus, Plaintiff and class members were not always afforded compliant 30-minute meal periods during shifts when they were entitled to receive a meal period.  For example, Plaintiff and class members were expected to clock out for the meal periods at 12:00 p.m. and clock back in at the end of their meal periods no later than 12:30 p.m., which was the time that lunches for residents were scheduled to begin.  If Plaintiff and class members were not ready to begin serving lunches at 12:30 p.m., their supervisors would reprimand them for not being ready.  As a result, Plaintiff would sometimes cut her meal period short by five (5) to seven (7) minutes in order to meet her supervisors' expectation that she be ready to work and serve residents exactly at 12:30 p.m.

62.     Further, Defendants' management pressured Plaintiff and class members to record compliant meal periods, even when they did not receive a compliant meal period.  For example, on the occasions that Plaintiff began her meal period after 12:00 p.m. and/or cut her meal short by five (5) to seven (7) minutes at stated above, she was pressured to record that her meal period's duration was 30 minutes, even when she had to return early and resume working.  Thus, Defendants did not record all hours worked during meal periods and Plaintiff and class members performed work during meal periods for which they were not paid.

63. Third, Defendants expected Plaintiff and class members to monitor their company-issued radios to communicate with supervisors at all times, which employees understood to include during their unpaid meal periods. Management never instructed Plaintiff and class members to turn off or stop monitoring their company-issued radios while clocked out for their meal periods. For example, Defendants' supervisors would contact Plaintiff and other housekeeping employees on their radios to discuss work-related matters while clocked out for their meal period, but did not compensate them for this time. Defendants knew or should have known that Plaintiff and class members were being made to respond to management while off-the-clock and during meal periods in order to meet Defendants' expectations, but failed to compensate them for this time worked. Further, on information and belief, Defendants' expectation that employees monitor their radios at all times discouraged and impeded Plaintiff and class members from leaving the work premises during their meal periods and thus were denied the ability to use their meal periods freely for their own purposes. Thus, Defendants effectively maintained control over Plaintiff and class members during their unpaid meal periods.

64. Defendants knew or should have known that as a result of these company-wide practices and/or policies, Plaintiff and class members were performing their assigned duties off-the-clock before and after their shifts and during meal periods, and were suffered or permitted to perform work for which they were not paid. Because Plaintiff and class members worked shifts of eight (8) hours or more a day, or forty (40) hours a week or more, some of this off-the-clock work qualified for overtime premium pay. Therefore, Plaintiff and class members were not paid overtime wages for all of the overtime hours they actually worked.

65. Defendants' failure to pay Plaintiff and class members the balance of overtime compensation as required by California law, violates the provisions of California Labor Code sections 510 and 1198. Pursuant to California Labor Code section 1194, Plaintiff and class members are entitled to recover from Defendants their unpaid overtime compensation, as well as interest, costs, and attorneys' fees.

//

FIRST AMENDED CLASS ACTION COMPLAINT

## SECOND CAUSE OF ACTION

## Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198—Unpaid

## Minimum Wages

## (Against all Defendants)

66.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

67.    At all relevant times, California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 provide that the minimum wage for employees fixed by the IWC is the minimum wage to be paid to employees, and the payment of a wage less than the minimum so fixed is unlawful.  Compensable work time is defined in IWC Wage Order No. 5-2001 as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work for the employer, whether or not required to do so. . . ."  Cal. Code Regs. tit. 8, § 11050(2)(M) (defining "Hours Worked").

68.    First, as set forth above, as a result of Defendants' policies and/or practices of limiting the amount of overtime employees could accrue and pressuring employees to record only their scheduled hours in the timekeeping system rather than actual hours worked, Defendants required Plaintiff and class members to perform work off-the-clock before and after their scheduled shifts to complete work-related tasks, such as donning and doffing uniforms, including when they entered the premises before clocking in prior to a shift and when they exited the premises after clocking out at the end of a shift.  Defendants failed to track this time that Plaintiff and class members spent working off-the-clock, and Plaintiff and class members received no compensation for this time.

69.    Second, as also stated above, due to Defendants' policies and/or practices of understaffing their facilities, requiring employees to strictly adhere to residents' scheduled lunches, requiring employees to monitor company-issued radios to respond to calls from supervisors at all times, and to effectively remain on work premises during meal periods, Plaintiff and class members were prevented from taking all uninterrupted meal periods to which they were entitled and were required to work off-the-clock during meal periods, have

FIRST AMENDED CLASS ACTION COMPLAINT

their meal periods interrupted, and/or were otherwise not relieved of all duties during unpaid meal periods. Moreover, as stated, Defendants pressured Plaintiff and class members to record compliant meal periods, even when meal periods were missed, short, and/or interrupted. Thus, Defendants systematically failed to pay Plaintiff and class members for actual hours worked during unpaid meal periods because these hours were not always correctly recorded.

70. Defendants did not pay minimum wages for all hours worked by Plaintiff and class members. To the extent that these off-the-clock hours did not qualify for overtime premium payment, Defendants did not pay at least minimum wages for those hours worked off-the-clock in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198.

71. Defendants' failure to pay Plaintiff and class members minimum wages violates California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198. Pursuant to California Labor Code section 1194.2, Plaintiff and class members are entitled to recover from Defendants liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

**THIRD CAUSE OF ACTION**

**Violation of California Labor Code §§ 226.7, 512(a), 516, and 1198—Meal Period**

**Violations**

**(Against all Defendants)**

72. Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

73. At all relevant times herein set forth, California Labor Code section 512(a) provides that an employer may not require, cause, or permit an employee to work for a period of more than five (5) hours per day without providing the employee with a meal period of not less than thirty (30) minutes, except that if the total work period per day of the employee is not more than six (6) hours, the meal period may be waived by mutual consent of both the employer and the employee. Under California law, first meal periods must start after no more

Page 17

FIRST AMENDED CLASS ACTION COMPLAINT

than five hours.  *Brinker Rest. Corp. v. Superior Court*, 53 Cal.4th 1004, 1041-1042 (2012).

74.    At all relevant times herein set forth, California Labor Code sections 226.7, 512(a), 516, and 1198 provide that no employer shall require an employee to work during any meal period mandated by an applicable order of the IWC.

75.    At all relevant times herein set forth, Labor Code sections 226.7 and 512(a), and the applicable IWC Wage Order also require employers to provide a second meal period of not less than thirty (30) minutes if an employee works over ten (10) hours per day or to pay an employee one (1) additional hour of pay at the employee's regular rate, except that if the total hours worked is no more than twelve (12) hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

76.    First, as stated, Defendants had, and continue to have, a company-wide policy and/or practice of understaffing their facilities, which resulted in a failure to provide Plaintiff and class members with adequate meal period coverage.  As a result, Plaintiff and class members had to work through all or part of their meal periods, had their meal periods interrupted, and/or had to wait extended periods of time before taking meal periods because there were too few employees on duty to handle the workload and attend to residents, which included strictly adhering to residents' scheduled meals.  For example, as stated, Plaintiff would sometimes cut her meal period short by five (5) to seven (7) minutes in order to meet her supervisors' expectation that she was ready to work and serve resident lunches at exactly 12:30 p.m.

77.    Additionally, Defendants only provided Plaintiff and class members with one (1) timekeeping machine to clock in and out for their shifts and meal periods, thus forcing Plaintiff and class members to cut their meals short in order to clock back in at the end of their meal periods.  For instance, the timekeeping machine was located in the facility's office, which was located on the first floor, and the employee dining room was located on the fourth floor.  Sometimes the facility's elevator was either malfunctioning or otherwise unavailable, which forced Plaintiff to either wait for the elevator to become available or take the stairs,

FIRST AMENDED CLASS ACTION COMPLAINT

which could take 3-4 minutes to reach the office. And, because her supervisor expected employees to be ready to serve residents at 12:30 p.m., Plaintiff was forced to cut her meal periods short by five (5) to seven (7) minutes in order for her to be able to clock in on the first floor and take the elevator or stairs to the third floor, where she was assigned to work.

78. Second, as set forth above, because Defendants frowned upon employees accruing meal period premiums, Defendants' management pressured Plaintiff and class members to record compliant meal periods regardless of whether they had received a compliant meal period or not, in order to strictly limit the meal period premiums that would need to be paid by Defendants. For example, as stated, Plaintiff was required to record that she had received compliant meal periods on shifts when she had, in fact, received shortened or interrupted meal periods.

79. Third, as stated, Defendants expected Plaintiff and class members to monitor their company-issued radios to communicate with supervisors at all times, and did not instruct Plaintiff and class members to turn off their radios during meal periods. For example, Defendants' supervisors would contact Plaintiff and other housekeeping employees on their radios while clocked out for their meal period to discuss work-related matters. Further, on information and belief, Defendants' expectation that employees carry their radios at all times discouraged and impeded Plaintiff and class members from leaving the work premises during their meal periods, and thus, employees were denied the ability to use their meal periods freely for their own purposes. Thus, Defendants effectively maintained control over Plaintiff and class members during their meal periods.

80. Fourth, during the relevant time period, Defendants maintained a company-wide, unlawful written meal period policy insofar as it fails to correctly state the timing of when meal periods must occur. Under California law, first meal periods must start after no more than five hours of work. *Brinker*, 53 Cal.4th at 1041-1042. However, Defendants' "Time-Clock Work Rules" section in their "Memorandum RE: Performance Standards" dated December 18, 2019, states, in part: "[a]ll full-time employees working more than a 6-hour shift are required by Company policy to take a 30-minute meal period." Defendants' written

policy fails to state the correct timing of when the first meal period must take place (i.e., within the first five (5) hours of work) under California law and is therefore facially invalid. Furthermore, Defendants' non-compliant written meal period policy also fails to mention that employees are entitled to a second 30-minute meal period when working shifts in excess of ten (10) hours.

81. Fifth, Defendants did not provide Plaintiff and class members with second 30-minute meal periods on days that they worked in excess of 10 hours in one day. For example, during the relevant time period, Plaintiff sometimes worked shifts in excess of 10 hours in one day and did not take a second meal period. Plaintiff and class members did not sign valid meal period waivers on days that they were entitled to meal periods and were not relieved of all duties.

82. At all times herein mentioned, Defendants knew or should have known that, as a result of these policies, Plaintiff and class members were prevented from being relieved of all duties to take timely, uninterrupted meal periods. Defendants further knew or should have known that Defendants did not pay Plaintiff and class members all meal period premiums when meal periods were late, interrupted, shortened, and/or missed.

83. Moreover, Defendants engaged in a company-wide practice and/or policy of not paying all meal period premiums owed when compliant meal periods are not provided. Because of this practice and/or policy, Plaintiff and class members have not received premium pay for missed, late, shortened, and/or interrupted meal periods. As a result, Defendants failed to provide Plaintiff and class members compliant meal periods in violation of California Labor Code sections 226.7, 512(a), and 516 and failed to pay the full meal period premiums due.

84. Defendants' conduct violates the applicable IWC Wage Order, and California Labor Code sections 226.7, 512(a), 516, and 1198. Plaintiff and class members are therefore entitled to recover from Defendants one (1) additional hour of pay at the employee's regular rate of compensation for each work day that the meal period was not provided.

//

//

FIRST AMENDED CLASS ACTION COMPLAINT

**FOURTH CAUSE OF ACTION**

**Violation of California Labor Code §§ 226.7, 516, and 1198—Rest Period Violations**

**(Against all Defendants)**

85.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

86.    At all relevant times herein set forth, the applicable IWC Wage Order and California Labor Code sections 226.7, 516, and 1198 were applicable to Plaintiff's and class members' employment by Defendants.

87.    At all relevant times, the applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily work time is less than three and one-half (3 ½) hours.

88.    At all relevant times, California Labor Code section 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC.  To comply with its obligation to authorize and permit rest periods under California Labor Code section 226.7 and the applicable IWC Wage Order, an employer must "relinquish any control over how employees spend their break time, and relieve their employees of all duties—including the obligation that an employee remain on call.  A rest period, in short, must be a period of rest." *Augustus v. ABM Security Services, Inc.*, 2 Cal.5th 257, 273 (2016).

89.    During the relevant time period, Defendants regularly failed to authorize and permit Plaintiff and class members to take a ten (10) minute rest period per each four (4) hour period worked or major fraction thereof.  As with meal periods, Defendants' company-wide practices of understaffing, assigning heavy workloads, and/or requiring employees to monitor their company-issued radios at all times, resulted in a lack of rest period coverage and prevented Plaintiff and class members from being relieved of all duty in order to take

FIRST AMENDED CLASS ACTION COMPLAINT

compliant rest periods.  For example, Plaintiff's rest periods were interrupted 1-2 times per week by her manager to discuss work-related issues such as resident complaints.

90.    Furthermore, Defendants maintained and implemented, on a company-wide basis, a non-compliant written on-premises rest period policy, that required that Plaintiff and class members remain on the work premises during their rest periods and prevented Plaintiff and class members from taking compliant rest periods.  Specifically, Defendants' "Time-Clock Work Rules" section in their "Memorandum RE: Performance Standards" dated December 18, 2019, states, in relevant part, "[i]f you leave the Community while on duty for any reason other than your 30-minute meal period, you ***must seek*** managerial approval when you leave the building and you ***must also notify*** a member of the Management Team when you return to work . . . ."  (Emphasis in original.)  However, under California law, an employer must relinquish any control over how the employees spend their rest period time.  Thus, Defendants' written rest period policy is non-compliant on its face, as it fails to relinquish control over how employees spend their rest periods.  Further, because Plaintiff and class members were restricted from leaving the premises during rest periods, they were denied the ability to use their rest periods freely for their own purposes, such as running personal errands.  Thus, Defendants effectively maintained control over Plaintiff and class members during rest periods.

91.    As a result of Defendants' practices and policies, Plaintiff and class members worked shifts in excess of 3.5 hours, in excess of 6 hours, and/or in excess of 10 hours without receiving all uninterrupted rest periods to which they were entitled.

92.    Defendants have also engaged in a company-wide practice and/or policy of not paying rest period premiums owed when compliant rest periods are not authorized and permitted.  Because of this practice and/or policy, Plaintiff and class members have not received premium pay for all non-compliant rest periods.

93.    Defendants' conduct violates the applicable IWC Wage Order and California Labor Code sections 226.7, 516, and 1198.  Plaintiff and class members are therefore entitled to recover from Defendants one (1) additional hour of pay at the employee's regular rate of

compensation for each work day that a compliant rest period was not authorized and permitted.

## FIFTH CAUSE OF ACTION

**Violation of California Labor Code §§ 226(a), 1174(d), and 1198—Non-Compliant Wage Statements and Failure to Maintain Accurate Payroll Records**

**(Against all Defendants)**

94. Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

95. At all relevant times herein set forth, California Labor Code section 226(a) provides that every employer shall furnish each of his or her employees an accurate and complete itemized wage statement in writing, including, but not limited to, the name and address of the legal entity that is the employer, the inclusive dates of the pay period, total hours worked, and all applicable rates of pay.

96. At all relevant times, Defendants have knowingly and intentionally provided Plaintiff and Subclass members with uniform, incomplete, and inaccurate wage statements. For example, Defendants issued uniform wage statements to Plaintiff and Subclass members that fail to correctly list: gross wages earned; total hours worked; net wages earned; and all applicable hourly rates in effect during the pay period, including rates of pay for overtime wages, and the corresponding number of hours worked at each hourly rate. Specifically, Defendants violated sections 226(a)(1), 226(a)(2), 226(a)(5), and 226(a)(9).

97. Because Defendants did not record the time Plaintiff and Subclass members spent working off the clock and deducted time from their records for meal periods that were interrupted and/or missed (and therefore time for which they should have been paid), Defendants did not list the correct amount of gross wages and net wages earned by Plaintiff and Subclass members in compliance with sections 226(a)(1) and 226(a)(5). For the same reason, Defendants failed to accurately list the total number of hours worked by Plaintiff and Subclass members, in violation of section 226(a)(2), and failed to list the applicable hourly rates of pay in effect during the pay period and the corresponding accurate number of hours

worked at each hourly rate, in violation of section 226(a)(9).

98.     The wage statement deficiencies also include, among other things, failing to list the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; failing to list all deductions; failing to list the inclusive dates of the period for which employees were paid; failing to list the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number; failing to list the name and address of the legal entity that is the employer; and/or failing to state all hours worked as a result of not recording or stating hours worked off-the-clock.

99.     California Labor Code section 1174(d) provides that "[e]very person employing labor in this state shall . . . [k]eep a record showing the names and addresses of all employees employed and the ages of all minors" and "[k]eep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments . . . ." At all relevant times, and in violation of Labor Code section 1174(d), Defendants willfully failed to maintain accurate payroll records for Plaintiff and Subclass members showing the daily hours they worked and the wages paid thereto as a result of failing to record the off-the-clock hours that they worked.

100.     California Labor Code section 1198 provides that the maximum hours of work and the standard conditions of labor shall be those fixed by the Labor Commissioner and as set forth in the applicable IWC Wage Order. Section 1198 further provides that "[t]he employment of any employees for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful." Pursuant to the applicable IWC Wage Order, employers are required to keep accurate time records showing when the employee begins and ends each work period and meal period. During the relevant time period, Defendants engaged in company-wide practices and/or policies of failing to record actual hours worked and thereby failed to keep accurate records of work period and meal

period start and end times for Plaintiff and Subclass members, in violation of section 1198. Furthermore, in light of Defendants' failure to provide Plaintiff and Subclass members with second 30-minute meal periods to which they were entitled, Defendants kept no records of meal start and end times for second meal periods.

101.    Plaintiff and Subclass members are entitled to recover from Defendants the greater of their actual damages caused by Defendants' failure to comply with California Labor Code section 226(a), or an aggregate penalty not exceeding four thousand dollars ($4,000) per employee.

### SIXTH CAUSE OF ACTION

### Violation of California Labor Code §§ 201 and 202—Wages Not Timely Paid Upon Termination

### (Against all Defendants)

102.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

103.    At all times relevant herein set forth, Labor Code sections 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

104.    Defendants had a company-wide practice and/or policy of paying departing employees their final wages late, instead of adhering to the time requirements set forth in Labor Code sections 201 and 202.  For example, Defendants terminated Plaintiff on May 5, 2025; however, Defendants did not provide Plaintiff with her final wages until May 6, 2025. Thus, Defendants failed to pay Plaintiff her final wages immediately, in violation of California Labor code section 201.

105.    Additionally, Defendants willfully failed to pay Plaintiff and class members

who are no longer employed by Defendants the earned and unpaid wages set forth above, including but not limited to, overtime wages, minimum wages, and/or meal and rest period premiums, either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ.

106.    Defendants' failure to pay Plaintiff and class members who are no longer employed by Defendants their wages earned and unpaid at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ, violates Labor Code sections 201 and 202.  Plaintiff and class members are therefore entitled to recover from Defendants the statutory penalty wages for each day they were not paid, at their regular rate of pay, up to a thirty (30) day maximum pursuant to California Labor Code section 203.

**SEVENTH CAUSE OF ACTION**

**Violation of California Labor Code § 204—Failure to Timely Pay Wages During**

**Employment**

**(Against all Defendants)**

107.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

108.    This cause of action is dependent upon, and wholly derivative of, the overtime wages, minimum wages, and/or meal and rest period premiums that were not timely paid to Plaintiff and class members during their employment.

109.    At all times relevant herein set forth, Labor Code section 204 provides that all wages earned by any person in any employment between the first (1st) and the fifteenth (15th) days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the sixteenth (16th) and the twenty-sixth (26th) day of the month during which the labor was performed.  Labor Code section 204 further provides that all wages earned by any person in any employment between the sixteenth (16th) and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the first (1st) and the tenth (10th) day of the following month.

110. At all times relevant herein, Labor Code section 204 provides that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period. Alternatively, at all times relevant herein, Labor Code section 204 provides that the requirements of this section are deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven (7) calendar days following the close of the payroll period.

111. During the relevant time period, Defendants willfully failed to pay Plaintiff and class members all wages due including, but not limited to, overtime wages, minimum wages, and/or meal and rest period premiums, within the time periods specified by California Labor Code section 204.

112. Defendants' failure to pay Plaintiff and class members all wages due violates Labor Code section 204. Plaintiff and class members are therefore entitled to recover from Defendants the statutory penalty wages pursuant to California Labor Code section 210.

## EIGHTH CAUSE OF ACTION

### Violation of California Labor Code § 2802—Unpaid Business-Related Expenses

### (Against all Defendants)

113. Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

114. At all times herein set forth, California Labor Code section 2802 provides that an employer must reimburse employees for all necessary expenditures and losses incurred by the employee in the performance of his or her job. The purpose of Labor Code section 2802 is to prevent employers from passing off their cost of doing business and operating expenses on to their employees. *Cochran v. Schwan's Home Service, Inc.*, 228 Cal.App.4th 1137, 1144 (2014). The applicable wage order, IWC Wage Order No. 5-2001, provides that: "[w]hen tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade

or craft." IWC Wage Order No. 5-2001 also provides that: "[w]hen uniforms are required by the employer to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the employer."

115. First, during the relevant time period, Defendants, on a company-wide basis, required that Plaintiff and class members use their personal mobile devices, including, but not limited to, cellular phones, and/or mobile data to carry out their job duties but failed to reimburse them for the costs of their work-related mobile device and/or mobile data expenses. For example, Plaintiff was required to use her personal cellular phone to communicate with her supervisor regarding training tests and shift scheduling. Although Defendants required Plaintiff and class members to use their personal mobile devices and mobile data to carry out their work-related duties, Defendants failed to reimburse them for their costs incurred.

116. Second, during the relevant time period, Defendants required Plaintiff and class members to wear uniform shirts bearing the Hawthorn Senior Living logo. However, due to the nature of residential care work, Plaintiff's and class members' uniforms would become sweaty, stained, or soiled such that they were unable to mix these clothes in with other laundry. As a result, they had to wash their uniform items separately from their other clothing items, thus incurring additional utility and laundry expenses for the upkeep of their uniforms. Thus, Defendants failed to maintain the uniforms they required Plaintiff and class members to wear during their shifts and forced them to incur the cost of maintaining employee uniforms.

117. Third, during the relevant time period, Defendants required Plaintiff and class members to wear specialty footwear such as non-skid or non-slip shoes, which they were required to wear while at work and were necessary for the performance of their duties. For example, Plaintiff spent approximately $120 on two (2) pairs of non-skid or non-slip shoes, but she was not reimbursed for these costs. Thus, Defendants failed to provide or reimburse Plaintiff and class members for the specialty footwear they required employees to wear during their shifts.

118. Defendants could have provided Plaintiff and class members with the actual equipment for use on the job, such as company mobile devices and specialty footwear as well

FIRST AMENDED CLASS ACTION COMPLAINT

as access to laundering services.  Or, Defendants could have reimbursed employees for the costs of their mobile device usage, specialty footwear, and laundering expenses or provided a uniform maintenance allowance.  Instead, Defendants passed these operating costs onto Plaintiff and class members.  At all relevant times, Plaintiff did not earn at least two (2) times the minimum wage.

119.   Defendants' company-wide policy and/or practice of not reimbursing employees for expenses necessarily incurred and passing on their operating costs to Plaintiff and class members violates California Labor Code section 2802.  Defendants have intentionally and willfully failed to reimburse Plaintiff and class members for necessary business-related expenses and costs.

120.   Pursuant to California Labor Code section 2802, Plaintiff and class members are entitled to recover from Defendants their business-related expenses incurred during the course and scope of their employment, plus interest, costs, and attorneys' fees.

**NINTH CAUSE OF ACTION**

**For Civil Penalties Pursuant to California Labor Code §§ 2698, *et seq.***

**(Against all Defendants)**

121.   Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

122.   California Labor Code sections 2698, *et seq.* permit Plaintiff to recover civil penalties for the violation(s) of the Labor Code sections enumerated in Labor Code section 2699.5.  Section 2699.5 enumerates Labor Code sections 201, 202, 204, 1174(d), and 1198. Labor Code section 2699.3(c) permits aggrieved employees, including Plaintiff, to recover civil penalties for violations of those Labor Code sections not found in section 2699.5, including sections 226(a), 226.7, 510, 512(a), 516, 1182.12, 1194, 1197, 1197.1, 2802, and 2810.5.

123.   Defendants' conduct, as alleged herein, violates numerous sections of the California Labor Code, including, but not limited to, the following:

(a)     Violation of Labor Code sections 510 and 1198, and the applicable IWC

FIRST AMENDED CLASS ACTION COMPLAINT

Wage Order for Defendants' failure to compensate Plaintiff and other aggrieved employees with all required overtime pay, as alleged herein;

(b)     Violation of Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198, and the applicable IWC Wage Order for Defendants' failure to compensate Plaintiff and other aggrieved employees with at least minimum wages for all hours worked, as alleged herein;

(c)     Violation of Labor Code sections 226.7, 512(a), 516, and 1198, and the applicable IWC Wage Order for Defendants' failure to provide Plaintiff and other aggrieved employees with meal periods, as alleged herein;

(d)     Violation of Labor Code sections 226.7, 516, and 1198, and the applicable IWC Wage Order for Defendants' failure to authorize and permit Plaintiff and other aggrieved employees to take rest periods, as alleged herein;

(e)     Violation of Labor Code sections 226(a) and 1198, and the applicable IWC Wage Order for failure to provide accurate and complete wage statements to Plaintiff and other aggrieved employees, as alleged herein;

(f)     Violation of Labor Code sections 1174(d) and 1198, and the applicable IWC Wage Order for failure to maintain payroll records, as alleged herein;

(g)     Violation of Labor Code sections 201 and 202 for failure to pay all earned wages upon termination, as alleged herein;

(h)     Violation of Labor Code section 204 for failure to pay all earned wages during employment, as alleged herein;

(i)     Violation of Labor Code section 2802 for failure to reimburse Plaintiff and other aggrieved employees for all business expenses necessarily incurred, as alleged herein; and

(j)     Violation of Labor Code section 2810.5(a)(1)(A)-(C), for failure to provide notice of material terms of employment, as set forth below.

Page 30

FIRST AMENDED CLASS ACTION COMPLAINT

124.    At all relevant times herein, California's Wage Theft Prevention Act was enacted to ensure that employers provide employees with basic information material to their employment relationship at the time of hiring, and to ensure that employees are given written and timely notice of any changes to basic information material to their employment.  Codified at California Labor Code section 2810.5, the Wage Theft Prevention Act provides that at the time of hiring, an employer must provide written notice to employees containing basic and material payroll information, including, among other things, the rate(s) of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or otherwise, including any rates for overtime, the regular payday designated by the employer, and any allowances claims as part of the minimum wage, including meal or lodging allowances.  Labor Code § 2810.5(a)(1)(A)-(C).

125.    At all relevant times, Defendants failed, on a company-wide basis, to provide written notice to Plaintiff and other aggrieved employees that lists the requisite information set forth in Labor Code section 2810.5(a)(1)(A)-(C).

126.    Defendants' failure to provide Plaintiff and other aggrieved employees with written notice of basic information regarding their employment with Defendants is in violation of California Labor Code section 2810.5.  Plaintiff and other aggrieved employees are therefore entitled to recover civil penalties pursuant to Labor Code sections 2699(a), (f), and (k).

**TENTH CAUSE OF ACTION**

**Violation of California Business & Professions Code §§ 17200,** *et seq.* **–**

**Unlawful Business Practices**

**(Against all Defendants)**

127.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

128.    Defendants are "persons" as defined by California Business & Professions Code section 17201, as they are corporations, firms, partnerships, joint stock companies, and/or associations.

129. Defendants' conduct, as alleged herein, has been, and continues to be, unfair, unlawful and harmful to Plaintiff, class members, and to the general public. Plaintiff has suffered injury in fact and has lost money as a result of Defendants' unlawful business practices. Plaintiff seeks to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure section 1021.5.

130. Defendants' activities, as alleged herein, are violations of California law, and constitute unlawful business acts and practices in violation of California Business & Professions Code sections 17200, *et seq*.

131. A violation of California Business & Professions Code sections 17200, *et seq*. may be predicated on the violation of any state or federal law. In the instant case, Defendants' policies and practices have violated state law in at least the following respects:

    (a) Requiring non-exempt, hourly paid employees, including Plaintiff and class members, to work overtime without paying them proper compensation in violation of California Labor Code sections 510 and 1198, and the applicable IWC Wage Order, as alleged herein;

    (b) Failing to pay at least minimum wage to Plaintiff and class members in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198, and the applicable IWC Wage Order, as alleged herein;

    (c) Failing to provide all meal periods to Plaintiff and class members in violation of California Labor Code sections 226.7, 512(a), 516, and 1198, and the applicable IWC Wage Order, as alleged herein;

    (d) Failing to authorize and permit Plaintiff and class members to take all rest periods in violation of California Labor Code sections 226.7, 516, and 1198, and the applicable IWC Wage Order, as alleged herein;

    (e) Failing to provide Plaintiff and Subclass members with accurate wage statements and failing to maintain accurate payroll records in violation of California Labor Code sections 226(a), 1174(d), and 1198, and the

applicable IWC Wage Order, as alleged herein;

(f)  Failing to timely pay all earned wages to Plaintiff and class members in violation of California Labor Code section 204, as alleged herein;

(g)  Failing to reimburse Plaintiff and class members for all business expenses necessarily incurred in violation of California Labor Code section 2802, as alleged herein; and

(h)  Failing to provide written notice of information material to Plaintiff's and class members' employment with Defendants in violation of California Labor Code section 2810.5(a)(1)(A)-(C), as set forth below.

132.  At all relevant times herein, California's Wage Theft Prevention Act was enacted to ensure that employers provide employees with basic information material to their employment relationship at the time of hiring, and to ensure that employees are given written and timely notice of any changes to basic information material to their employment.  Codified at California Labor Code section 2810.5, the Wage Theft Prevention Act provides that at the time of hiring, an employer must provide written notice to employees containing basic and material payroll information, including, among other things, the rate(s) of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or otherwise, including any rates for overtime, the regular payday designated by the employer, and any allowances claims as part of the minimum wage, including meal or lodging allowances.  Labor Code § 2810.5(a)(1)(A)-(C).

133.  At all relevant times, on information and belief, Defendants failed, on a company-wide basis, to provide written notice to Plaintiff and class members that lists all the requisite information set forth in Labor Code section 2810.5(a)(1)(A)-(C).  Specifically, Defendants failed to provide Plaintiff and class members with the hourly rate(s) of pay, including the overtime rate(s) of pay, in violation of section 2810.5(a)(1)(A).  Instead, the wage theft form that Defendants provided to Plaintiff is blank where the aforementioned wage information should be filled in.  Defendants' failure to provide Plaintiff and class members with written notice of basic information regarding their employment with Defendants is in

Page 33

FIRST AMENDED CLASS ACTION COMPLAINT

violation of California Labor Code section 2810.5.

134. As a result of the violations of California law herein described, Defendants unlawfully gained an unfair advantage over other businesses. Plaintiff and class members have suffered pecuniary loss by Defendants' unlawful business acts and practices alleged herein.

135. Pursuant to California Business & Professions Code sections 17200, et seq., Plaintiff and class members are entitled to restitution of the wages withheld and retained by Defendants during a period that commences four years prior to the filing of the initial complaint; a permanent injunction requiring Defendants to pay all outstanding wages due to Plaintiff and class members; and an award of attorneys' fees pursuant to California Code of Civil Procedure section 1021.5 and other applicable laws; and an award of costs.

**ELEVENTH CAUSE OF ACTION**

**Violation of California Business & Professions Code §§ 17200, *et seq.* –**

**Unfair Business Practices**

**(Against all Defendants)**

136. Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

137. Defendants are "persons" as defined by California Business & Professions Code section 17201, as they are corporations, firms, partnerships, joint stock companies, and/or associations.

138. Defendants' conduct, as alleged herein, has been, and continues to be, unfair, and harmful to Plaintiff, class members, and to the general public. Plaintiff has suffered injury in fact and has lost money as a result of Defendants' unfair business practices. Plaintiff seeks to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure section 1021.5.

139. Defendants' activities, namely Defendants' company-wide practice and/or policy of not paying Plaintiff and class members all meal and rest period premiums due to them under Labor Code section 226.7, deprived Plaintiff and class members of the

Page 34

compensation guarantee and enhanced enforcement implemented by section 226.7. The statutory remedy provided by section 226.7 is a "'dual-purpose' remedy intended primarily to compensate employees, and secondarily to shape employer conduct." *Safeway, Inc. v. Superior Court*, 238 Cal.App.4th 1138, 1149 (2015). The statutory benefits of section 226.7 were guaranteed to Plaintiff and class members as part of their employment with Defendants, and thus Defendants' practice and/or policy of denying these statutory benefits constitutes an unfair business practice in violation of California Business & Professions Code sections 17200, *et seq.* (*Id.*)

140. A violation of California Business & Professions Code sections 17200, *et seq.* may be predicated on any unfair business practice. In the instant case, Defendants' policies and practices have violated the spirit of California's meal and rest period laws and constitute acts against the public policy behind these laws.

141. Pursuant to California Business & Professions Code sections 17200, *et seq.*, Plaintiff and class members are entitled to restitution for the class-wide loss of the statutory benefits implemented by section 226.7 withheld and retained by Defendants during a period that commences four years prior to the filing of the initial complaint; a permanent injunction requiring Defendants to pay all statutory benefits implemented by section 226.7 due to Plaintiff and class members; an award of attorneys' fees pursuant to California Code of Civil Procedure section 1021.5 and other applicable laws; and an award of costs.

## REQUEST FOR JURY TRIAL

Plaintiff requests a trial by jury.

## PRAYER FOR RELIEF

Plaintiff, on behalf of all others similarly situated, prays for relief and judgment against Defendants, jointly and severally, as follows:

1. For damages, unpaid wages, penalties, injunctive relief, and attorneys' fees in excess of thirty-five thousand dollars ($35,000), exclusive of interest and costs. Plaintiff reserves the right to amend her prayer for relief to seek a different amount.

//

FIRST AMENDED CLASS ACTION COMPLAINT

**Class Certification**

2. That this case be certified as a class action;

3. That Plaintiff be appointed as the representative of the Class and Subclass;

4. That counsel for Plaintiff be appointed as class counsel.

**As to the First Cause of Action**

5. That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 510 and 1198, and the applicable IWC Wage Order by willfully failing to pay all overtime wages due to Plaintiff and class members;

6. For general unpaid wages at overtime wage rates and such general and special damages as may be appropriate;

7. For pre-judgment interest on any unpaid overtime compensation commencing from the date such amounts were due, or as otherwise provided by law;

8. For reasonable attorneys' fees and for costs of suit incurred herein pursuant to California Labor Code section 1194(a); and

9. For such other and further relief as the Court may deem equitable and appropriate.

**As to the Second Cause of Action**

10. That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198, and the applicable IWC Wage Order by willfully failing to pay minimum wages to Plaintiff and class members;

11. For general unpaid wages and such general and special damages as may be appropriate;

12. For pre-judgment interest on any unpaid compensation from the date such amounts were due, or as otherwise provided by law;

13. For reasonable attorneys' fees and for costs of suit incurred herein pursuant to California Labor Code section 1194(a);

14. For liquidated damages pursuant to California Labor Code section 1194.2; and

15. For such other and further relief as the Court may deem equitable and

Page 36

FIRST AMENDED CLASS ACTION COMPLAINT

appropriate.

### As to the Third Cause of Action

16. That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 226.7, 512(a), 516, and 1198, and the applicable IWC Wage Order by willfully failing to provide all meal periods to Plaintiff and class members;

17. That the Court make an award to the Plaintiff and class members of one (1) hour of pay at each employee's regular rate of pay for each workday that a meal period was not provided;

18. For all actual, consequential, and incidental losses and damages, according to proof;

19. For premiums pursuant to California Labor Code section 226.7(c);

20. For pre-judgment interest on any unpaid meal period premiums from the date such amounts were due, or as otherwise provided by law;

21. For attorneys' fees pursuant to California Code of Civil Procedure section 1021.5, or as otherwise provided by law; and

22. For such other and further relief as the Court may deem equitable and appropriate.

### As to the Fourth Cause of Action

23. That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 226.7, 516, and 1198, and the applicable IWC Wage Order by willfully failing to authorize and permit Plaintiff and class members to take all rest periods;

24. That the Court make an award to the Plaintiff and class members of one (l) hour of pay at each employee's regular rate of pay for each workday that a rest period was not authorized and permitted;

25. For all actual, consequential, and incidental losses and damages, according to proof;

26. For premiums pursuant to California Labor Code section 226.7(c);

27. For pre-judgment interest on any unpaid rest period premiums from the date

FIRST AMENDED CLASS ACTION COMPLAINT

such amounts were due, or as otherwise provided by law;

28. For attorneys' fees pursuant to California Code of Civil Procedure section 1021.5, or as otherwise provided by law; and

29. For such other and further relief as the Court may deem equitable and appropriate.

**As to the Fifth Cause of Action**

30. That the Court declare, adjudge and decree that Defendants violated the recordkeeping provisions of California Labor Code section 226(a) and the applicable IWC Wage Order as to Plaintiff and Subclass members, and willfully failed to provide accurate itemized wage statements thereto;

31. For all actual, consequential, and incidental losses and damages, according to proof;

32. For injunctive relief pursuant to California Labor Code section 226(h);

33. For statutory penalties pursuant to California Labor Code section 226(e);

34. For attorneys' fees and costs pursuant to California Labor Code section 226(e)(1); and

35. For such other and further relief as the Court may deem equitable and appropriate.

**As to the Sixth Cause of Action**

36. That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 201 and 202 by willfully failing to pay overtime wages, minimum wages, and/or meal and rest period premiums owed at the time of termination of the employment of Plaintiff and other terminated class members;

37. For all actual, consequential and incidental losses and damages, according to proof;

38. For waiting time penalties according to proof pursuant to California Labor Code section 203 for all employees who have left Defendants' employ;

39. For pre-judgment interest on any unpaid wages from the date such amounts

FIRST AMENDED CLASS ACTION COMPLAINT

were due, or as otherwise provided by law;

40.    For attorneys' fees pursuant to California Code of Civil Procedure section 1021.5, or as otherwise provided by law; and

41.    For such other and further relief as the Court may deem equitable and appropriate.

### As to the Seventh Cause of Action

42.    That the Court declare, adjudge and decree that Defendants violated California Labor Code section 204 by willfully failing to timely pay Plaintiff and class members overtime wages, minimum wages, and/or meal and rest period premiums during their employment;

43.    For all actual, consequential and incidental losses and damages, according to proof;

44.    For statutory penalties, plus 25 percent of the amount of wages unlawfully withheld, according to proof pursuant to California Labor Code section 210;

45.    For pre-judgment interest on any unpaid wages from the date such amounts were due, or as otherwise provided by law;

46.    For attorneys' fees pursuant to California Code of Civil Procedure section 1021.5, or as otherwise provided by law; and

47.    For such other and further relief as the Court may deem equitable and appropriate.

### As to the Eighth Cause of Action

48.    That the Court declare, adjudge and decree that Defendants violated California Labor Code section 2802 by willfully failing to reimburse and/or indemnify all business-related expenses and costs incurred by Plaintiff and class members;

49.    For unpaid business-related expenses and such general and special damages as may be appropriate;

50.    For pre-judgment interest on any unpaid business-related expenses from the date such amounts were due pursuant to California Labor Code section 2802(b), or as

otherwise provided by law;

51. For all actual, consequential, and incidental losses and damages, according to proof;

52. For attorneys' fees and costs pursuant to California Labor Code section 2802(c), or as otherwise provided by law; and

53. For such other and further relief as the Court may deem equitable and appropriate.

### As to the Ninth Cause of Action

54. That the Court declare, adjudge and decree that Defendants violated the following California Labor Code provisions as to Plaintiff and other aggrieved employees: 510 and 1198 (by failing to pay all overtime compensation); 1182.12, 1194, 1197, 1197.1, and 1198 (by failing to pay at least minimum wages for all hours worked); 226.7, 512(a), 516, and 1198 (by failing to provide all meal periods); 226.7, 516, and 1198 (by failing to authorize and permit all rest periods); 226(a), 1174(d), and 1198 (by failing to provide accurate wage statements and maintain accurate payroll records); 201 and 202 (by failing to timely pay all earned wages upon termination); 204 (by failing to timely pay all earned wages during employment); 2802 (by failing to reimburse business expenses); and 2810.5 (by failing to provide notice of material terms of employment);

55. For civil penalties pursuant to the California Labor Code, including sections 210, 226.3, 256, 558, 1174.5, 2699(a), (f), and (k), for violations of California Labor Code sections 201, 202, 204, 226(a), 226.7, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, and 2810.5;

56. For injunctive relief pursuant to California Labor Code sections 1194.5 and/or 2699(k) to bring Defendants into compliance with the requirements of California Labor Code sections 201, 202, 204, 226(a), 226.7, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, and 2810.5;

57. For attorneys' fees and costs pursuant to California Labor Code section 2699(k)(1), and any and all other relevant statutes, for Defendants' violations of California

Labor Code sections 201, 202, 204, 226(a), 226.7, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, and 2810.5;

58.    For pre-judgment and post-judgment interest as provided by law; and

59.    For such other and further relief as the Court may deem equitable and appropriate.

**As to the Tenth Cause of Action**

60.    That the Court declare, adjudge and decree that Defendants' conduct of failing to provide Plaintiff and class members all overtime wages due to them; failing to provide Plaintiff and class members all minimum wages due to them, failing to provide Plaintiff and class members all meal periods, failing to authorize and permit Plaintiff and class members to take all rest periods, failing to provide Plaintiff and Subclass members accurate and complete wage statements, failing to maintain accurate payroll records for Plaintiff and class members, failing to timely pay Plaintiff and class members all earned wages during employment, failing to reimburse Plaintiff and class members for business-related expenses, and failing to provide written notice of material terms of employment, constitutes an unlawful business practice in violation of California Business and Professions Code sections 17200, *et seq.*;

61.    For restitution of unpaid wages to Plaintiff and all class members and prejudgment interest from the day such amounts were due and payable;

62.    For the appointment of a receiver to receive, manage, and distribute any and all funds disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a result of violations of California Business & Professions Code sections 17200, *et seq.*;

63.    For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Code of Civil Procedure section 1021.5; and

64.    For such other and further relief as the Court may deem equitable and appropriate.

**As to the Eleventh Cause of Action**

65.    That the Court declare, adjudge and decree that Defendants' conduct of denying

FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff and class members the statutory benefits guaranteed under section 226.7 constitutes an unfair business practice in violation of California Business and Professions Code sections 17200, *et seq.*;

66.    For restitution of the statutory benefits under section 226.7 unfairly withheld from Plaintiff and class members and prejudgment interest from the day such amounts were due and payable;

67.    For the appointment of a receiver to receive, manage, and distribute any and all funds disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a result of violations of California Business & Professions Code sections 17200, *et seq.*;

68.    For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Code of Civil Procedure section 1021.5;

69.    For pre-judgment and post-judgment interest as provided by law; and

70.    For such other and further relief as the Court may deem equitable and appropriate.

Dated: July 7, 2026                      Respectfully submitted,

                                         Capstone Law APC


By:    */s/ Helga Hakimi*
                                         Orlando Villalba
                                         Helga Hakimi
                                         Tyler Anderson
                                         Jeffrey Jimenez

                                         Attorneys for Plaintiff Rosario Ortiz

FIRST AMENDED CLASS ACTION COMPLAINT

# EXHIBIT "1"



1875 Century Park East, Suite 1000
Los Angeles, California 90067
310.556.4811 Main | 310.943.0396 Fax

ALEXANDER LIMA
310.712.8154 Direct
Alexander.Lima@capstonelawyers.com

August 13, 2025

VIA ONLINE SUBMISSION

California Labor & Workforce Development Agency
ATTN: PAGA Administrator
(https://dir.govfa.net/411)

Subject:      *Rosario Ortiz v. Hawthorn Senior Living, LLC*

Dear PAGA Administrator:

This office represents Rosario Ortiz in connection with her claims under the California Labor Code. Ms. Ortiz was an employee of HAWTHORN SENIOR LIVING, LLC ("HAWTHORN").

The employer may be contacted directly at the address below:

HAWTHORN SENIOR LIVING, LLC
9310 NE VANCOUVER MALL DR, STE 200
VANCOUVER, WA 98662

Ms. Ortiz intends to seek civil penalties, attorneys' fees, costs, and other available relief for violations of the California Labor Code, which are recoverable under sections 2698, *et seq.*, the Labor Code Private Attorneys General Act of 2004 ("PAGA"). Ms. Williams seeks relief on behalf of herself, the State of California, and other persons who are or were employed by HAWTHORN as a non-exempt, hourly paid employee in California and who received at least one wage statement ("aggrieved employees"). This letter is sent in compliance with the notice and reporting requirements of California Labor Code section 2699.3.

HAWTHORN employed Ms. Ortiz as an hourly paid, non-exempt employee from approximately September 2021 to May 2025. Ms. Ortiz worked for HAWTHORN as a Housekeeper and Server at its Scholl Canyon Estates senior living community location in Glendale, California. During her employment, Ms. Ortiz typically worked eight (8) hours or more per day and five (5) days per week. By the end of her employment, Ms. Ortiz was compensated approximately $19.00 per hour. Her job duties included, without limitation, serving meals to residents, cleaning the dining area, and performing housekeeping of residences.

HAWTHORN committed each of the following Labor Code violations against Ms. Ortiz, the facts and theories of which follow, making her an "aggrieved employee" pursuant to California Labor Code section 2699(c)(1): [1]

**HAWTHORN's Company-Wide and Uniform Payroll and HR Practices**

HAWTHORN SENIOR LIVING, LLC is a Delaware limited liability company and is a senior housing management company with over 70 independent and assisted living communities, with six (6) facilities in California. Upon information and belief, HAWTHORN maintains a single, centralized Human Resources (HR) department at its corporate headquarters in Vancouver, Washington, for all non-exempt, hourly paid employees working for HAWTHORN in California, including Ms. Ortiz and other aggrieved employees. At all relevant times, HAWTHORN issued and maintained uniform, standardized scheduling and timekeeping practices and procedures for all non-exempt, hourly paid employees in California, including Ms. Ortiz and other aggrieved employees, regardless of their location or position.

Upon information and belief, HAWTHORN maintains a centralized Payroll department at its corporate headquarters in Vancouver, Washington, which processes payroll for all non-exempt, hourly paid employees working for HAWTHORN in California, including Ms. Ortiz and other aggrieved employees. Further, HAWTHORN issues the same formatted wage statements in the same manner for all non-exempt, hourly paid employees working in California, including Ms. Ortiz and other aggrieved employees, irrespective of their location, position, or manner in which each employee's employment ended. In other words, HAWTHORN utilized the same methods and formulas when calculating wages due to Ms. Ortiz and other aggrieved employees in California.

**Violation of California Labor Code §§ 510 and 1198 – Unpaid Overtime**

California Labor Code sections 510 and 1198 and the applicable Industrial Welfare Commission ("IWC") Wage Order require employers to pay employees working more than eight (8) hours in a day or more than forty (40) hours in a workweek at the rate of time-and-one-half (1 ½) times the regular rate of pay for all hours worked in excess of eight (8) hours in a day or more than forty (40) hours in a workweek. The applicable IWC Wage Order further provides that employers are required to pay employees working more than twelve (12) hours in a day overtime compensation at a rate of two (2) times their regular rate of pay. An employee's regular rate of pay includes all remuneration for employment paid to, or on behalf of, the employee, including nondiscretionary bonuses and incentive pay.

HAWTHORN willfully failed to pay all overtime wages owed to Ms. Ortiz and other aggrieved employees. During the relevant time period, Ms. Ortiz and other aggrieved employees were not paid overtime premiums for all of the hours they worked in excess of eight (8) hours in a day, in excess of

---

[1] These facts, theories, and claims are based on Ms. Ortiz's experience and counsel's review of those records currently available relating to Ms. Ortiz's employment. Discovery conducted in litigation of wage and hour claims such as these often reveals additional claims that the aggrieved employee was not initially aware of (because the aggrieved employee was not aware of the law's requirements, the employer misinformed its employee of the law's requirements, or because the employer effectively hid the violations). Thus, Ms. Ortiz reserves the right to supplement this letter with additional facts, theories, and claims if she becomes aware of them subsequent to the submission of this letter.

twelve (12) hours in a day, and/or in excess of forty (40) hours in a week, because all hours that they worked were not recorded.

During the relevant time period, HAWTHORN had, and continues to have, a company-wide policy and/or practice of discouraging and impeding Ms. Ortiz and other aggrieved employees from recording hours worked that were outside of their scheduled shifts in order to limit the amount of overtime employees could accrue.  Specifically, HAWTHORN's managers pressured Ms. Ortiz and other aggrieved employees to record their scheduled shift start-times and shift end-times instead of their actual hours worked to limit the overtime hours employees were eligible to be compensated for.  This policy of limiting overtime led Ms. Ortiz and other aggrieved employees to work off-the-clock before and after their scheduled shifts in order to complete their assigned tasks.  For example, Ms. Ortiz and other aggrieved employees were required to change into and/or don their uniform items, which included specific uniform sets used for different assigned tasks (such as a uniform set for serving meals to residents and a different uniform set for housekeeping activities), on HAWTHORN's premises, before clocking in at the start of their shifts.  As another example, after clocking out at the end of their shifts, Ms. Ortiz and other aggrieved employees were required to change out of and/or doff their uniform items, and drop them off in a designated area before they could go home for the day.  However, HAWTHORN did not allow Ms. Ortiz and other aggrieved employees to report all of the time spent donning and doffing their uniforms at the beginning and end of their shifts despite being on HAWTHORN's premises and under HAWTHORN's control.  As a result, Ms. Ortiz and other aggrieved employees were required to spend time donning and doffing their uniforms off-the-clock.

HAWTHORN knew or should have known that as a result of these company-wide practices and/or policies, Ms. Ortiz and other aggrieved employees were performing their assigned duties off-the-clock before and after their shifts, and were suffered or permitted to perform work for which they were not paid.  Because Ms. Ortiz and other aggrieved employees worked shifts of eight (8) hours or more a day, or forty (40) hours a week or more, some of this off-the-clock work qualified for overtime premium pay.  Therefore, Ms. Ortiz and other aggrieved employees were not paid overtime wages for all of the overtime hours they actually worked.

HAWTHORN's failure to pay Ms. Ortiz and other aggrieved employees the balance of overtime compensation, as required by California law, violates the provisions of California Labor Code sections 510 and 1198.  Ms. Ortiz and other aggrieved employees are entitled to recover civil penalties, attorneys' fees, costs, and interest thereon, and seek injunctive relief to bring HAWTHORN into compliance with the applicable IWC Wage Order and Labor Code sections 510 and 1198, pursuant to Labor Code sections 558 and/or 2699(a), (f), and (k).

**<u>Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 – Unpaid Minimum Wages</u>**

California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 require employers to pay employees the minimum wage fixed by the IWC.  The payment of a lesser wage than the minimum so fixed is unlawful.  Compensable work time is defined in Wage Order No. 5-2001 as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work for the employer, whether or not required to do so."  Cal. Code Regs. Tit. 8, § 11050(2)(M) (defining "Hours Worked").

3

As set forth above, as a result of HAWTHORN's policies and/or practices of limiting the amount of overtime employees could accrue and pressuring employees to record only their scheduled hours in the timekeeping system rather than actual hours worked, HAWTHORN required Ms. Ortiz and other aggrieved employees to perform work off-the-clock before and after their scheduled shifts to complete work-related tasks, such as donning and doffing uniforms, including when they entered the premises before clocking in prior to a shift and when they exited the premises after clocking out at the end of a shift.  HAWTHORN failed to track this time that Ms. Ortiz and other aggrieved employees spent working off-the-clock, and Ms. Ortiz and other aggrieved employees received no compensation for this time.

HAWTHORN did not pay at least minimum wages for all hours worked by Ms. Ortiz and other aggrieved employees.  To the extent that these off-the-clock hours did not qualify for overtime premium payment, HAWTHORN did not pay at least minimum wages for those hours worked off-the-clock in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198.

Accordingly, HAWTHORN regularly failed to pay at least minimum wages to Ms. Ortiz and other aggrieved employees for all of the hours they worked in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198.   Ms. Ortiz and other aggrieved employees are entitled to recover civil penalties, attorneys' fees, costs, and interest thereon, and seek injunctive relief to bring HAWTHORN into compliance with the applicable IWC Wage Order and Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198, pursuant to Labor Code sections 1197.1 and/or 2699(a), (f), and (k).

**Violation of California Labor Code §§ 226.7, 516, and 1198 – Failure to Authorize and Permit Rest Periods**

California Labor Code sections 226.7, 516, and 1198 and the applicable IWC Wage Order require employers to provide rest periods and to pay an employee one (1) additional hour of pay at the employee's regular rate for each work day that a meal or rest period is not provided.  California Labor Code section 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC.  The applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily work time is less than three and one-half (3 ½) hours.

To comply with its obligation to authorize and permit rest periods under California Labor Code section 226.7 and the applicable IWC Wage Order, an employer must "relinquish any control over how employees spend their break time, and relieve their employees of all duties—including the obligation that an employee remain on call.  A rest period, in short, must be a period of rest." *Augustus, et al. v. ABM Security Services, Inc.*, 2 Cal. 5th 257, 273 (2016).

During the relevant time period, HAWTHORN maintained and implemented, on a company-wide basis, a non-compliant written on-premises rest period policy, that required that Ms. Ortiz and other aggrieved employees remain on the work premises during their rest periods and prevented Ms. Ortiz and other aggrieved employees from taking compliant rest periods.  Specifically, HAWTHORN's "Time-Clock Work Rules" section in its "Memorandum RE: Performance Standards" dated December 18, 2019, states, in relevant part, "[i]f you leave the Community while on duty for any

4

reason other than your 30-minute meal period, you ***must seek*** managerial approval when you leave the building and you ***must also notify*** a member of the Management Team when you return to work . . . ." (Emphasis in original.) However, under California law, an employer must relinquish any control over how the employees spend their rest period time. Thus, HAWTHORN's written rest period policy is non-compliant on its face, as it fails to relinquish control over how employees spend their rest periods. Further, because Ms. Ortiz and other aggrieved employees were restricted from leaving the premises during rest periods, they were denied the ability to use their rest periods freely for their own purposes, such as running personal errands. Thus, HAWTHORN effectively maintained control over Ms. Ortiz and other aggrieved employees during rest periods.

As a result of HAWTHORN's practices and policies, Ms. Ortiz and other aggrieved employees worked shifts in excess of 3.5 hours, in excess of 6 hours, and/or in excess of 10 hours without receiving all uninterrupted rest periods to which they were entitled.

HAWTHORN also has engaged in a company-wide practice and/or policy of not paying rest period premiums owed when compliant rest periods are not authorized and permitted. Because of this practice and/or policy, Ms. Ortiz and other aggrieved employees have not received premium pay for all non-compliant rest periods.

Accordingly, HAWTHORN failed to authorize and permit all rest periods in violation of California Labor Code sections 226.7, 516, and 1198. Ms. Ortiz and other aggrieved employees are entitled to recover civil penalties, attorneys' fees, costs, and interest thereon, and seek injunctive relief to bring HAWTHORN into compliance with the applicable IWC Wage Order and Labor Code sections 226.7, 516, and 1198, pursuant to Labor Code sections 558 and/or 2699(a), (f), and (k).

**Violation of California Labor Code §§ 226(a), 1174(d), and 1198 – Non-Compliant Wage Statements and Failure to Maintain Accurate Payroll Records**

California Labor Code section 226(a) requires employers to make, keep and provide true, accurate, and complete employment records. HAWTHORN has not provided Ms. Ortiz and other aggrieved employees with properly itemized wage statements. Labor Code section 226(e) provides that if an employer fails to comply with providing an employee with properly itemized wage statements as set forth in 226(a), then the employee is entitled to recover the greater of all actual damages or $50 for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period, not to exceed $4,000. Further, Labor Code section 226.3 provides that any employer who violates section 226(a) shall be subject to a civil penalty in the amount of $250 per employee per violation in an initial citation and $1,000 per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage statement or fails to keep the required records pursuant to Section 226(a).

During the relevant time period, HAWTHORN has knowingly and intentionally provided Ms. Ortiz and other aggrieved employees with uniform, incomplete, and inaccurate wage statements. For example, HAWTHORN issued uniform wage statements to Ms. Ortiz and other aggrieved employees that fail to correctly list: gross wages earned; total hours worked; net wages earned; and all applicable hourly rates in effect during the pay period, including rates of pay for overtime wages, and the corresponding number of hours worked at each hourly rate. Specifically, HAWTHORN violated sections 226(a)(1), 226(a)(2), 226(a)(5), and 226(a)(9).

5

Because HAWTHORN did not accurately record the time Ms. Ortiz and other aggrieved employees spent working off-the-clock, HAWTHORN did not list the correct amount of gross wages and net wages earned by Ms. Ortiz and other aggrieved employees in compliance with section 226(a)(1) and section 226(a)(5), respectively.  For the same reason, HAWTHORN failed to accurately list the total number of hours worked by Ms. Ortiz and other aggrieved employees, in violation of section 226(a)(2), and failed to list the applicable hourly rates of pay in effect during the pay period and the corresponding accurate number of hours worked at each hourly rate, in violation of section 226(a)(9).

The wage statement deficiencies also include, among other things, failing to list the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; failing to list all deductions; failing to list the inclusive dates of the period for which aggrieved employees were paid; failing to list the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number; failing to list the name and address of the legal entity that is the employer; and/or failing to state all hours worked as a result of not recording or stating hours worked off-the-clock.

California Labor Code section 1174(d) provides that "[e]very person employing labor in this state shall . . . [k]eep a record showing the names and addresses of all employees employed and the ages of all minors" and "[k]eep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments . . . ."  Labor Code section 1174.5 provides that employers are subject to a $500 civil penalty if they fail to maintain accurate and complete records as required by section 1174(d).  During the relevant time period, and in violation of Labor Code section 1174(d), HAWTHORN willfully failed to maintain accurate payroll records for Ms. Ortiz and other aggrieved employees showing the daily hours they worked and the wages paid thereto as a result of failing to record the off-the-clock hours that they worked.

California Labor Code section 1198 provides that the maximum hours of work and the standard conditions of labor shall be those fixed by the Labor Commissioner and as set forth in the applicable IWC Wage Order.  Section 1198 further provides that "[t]he employment of any employees for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful."  Pursuant to the applicable IWC Wage Order, employers are required to keep accurate time records showing when the employee begins and ends each work period and meal period.  During the relevant time period, HAWTHORN engaged in company-wide practices and/or policies of failing to record actual hours worked and thereby failed to keep accurate records of work period start and end times for Ms. Ortiz and other aggrieved employees, in violation of section 1198.

Because HAWTHORN failed to provide the correct net and gross wages earned, applicable rates of pay, and number of total hours worked on wage statements, Ms. Ortiz and other aggrieved employees have been prevented from verifying, solely from information on the wage statements themselves, that they were paid correctly and in full.  Instead, Ms. Ortiz and other aggrieved employees have had to look to sources outside of the wage statements themselves and reconstruct time records to determine whether in fact they were paid correctly and the extent of underpayment, thereby causing them injury.

Ms. Ortiz and other aggrieved employees are entitled to recover civil penalties, attorneys' fees, costs, and interest thereon, and seek injunctive relief to bring HAWTHORN into compliance with the

6

applicable IWC Wage Order and Labor Code sections 226(a), 1174(d), and 1198, pursuant to Labor Code sections 226.3, 1174.5, and/or 2699(a), (f), and (k).

**Violation of California Labor Code § 204 – Failure to Timely Pay Wages During Employment**

California Labor Code section 204 requires that all wages earned by any person in any employment between the 1st and the 15th days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 16th and the 26th day of the month during which the labor was performed, and that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month.  California Labor Code section 204 also requires that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period. Alternatively, California Labor Code section 204 provides that the requirements of this section are deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven (7) calendar days following the close of the payroll period.

During the relevant time period, HAWTHORN failed to pay Ms. Ortiz and other aggrieved employees all wages due to them, including, but not limited to, overtime wages, minimum wages, and/or rest period premiums, within any time period specified by California Labor Code section 204.

Ms. Ortiz and other aggrieved employees are entitled to recover civil penalties, attorneys' fees, costs, and interest thereon, and seek injunctive relief to bring HAWTHORN into compliance with Labor Code section 204, pursuant to Labor Code sections 210 and/or 2699(a), (f), and (k).

**Violation of California Labor Code §§ 201 and 202 – Failure to Timely Pay Final Wages Upon Termination**

California Labor Code sections 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

HAWTHORN had a company-wide practice and/or policy of paying departing employees their final wages late, instead of adhering to the time requirements set forth in Labor Code sections 201 and 202.  For example, HAWTHORN terminated Ms. Ortiz on May 5, 2025; however, HAWTHORN did not provide Ms. Ortiz with her final wages until May 6, 2025.  Thus, HAWTHORN failed to pay Ms. Ortiz her final wages immediately, in violation of California Labor code section 201.

HAWTHORN willfully failed to pay Ms. Ortiz and other aggrieved employees who are no longer employed by HAWTHORN the earned and unpaid wages set forth above, including but not limited to, overtime wages, minimum wages, and/or rest period premiums, either at the time of discharge, or within seventy-two (72) hours of their leaving HAWTHORN's employ.

Ms. Ortiz and other aggrieved employees are entitled to recover civil penalties, attorneys' fees, costs, and interest thereon, and seek injunctive relief to bring HAWTHORN into compliance with Labor Code sections 201 and 202, pursuant to Labor Code sections 256 and/or 2699(a), (f), and (k).

**Violation of California Labor Code § 2810.5(a)(1)(A)-(C) – Failure to Provide Notice of Material Terms of Employment**

California's Wage Theft Prevention Act was enacted to ensure that employers provide employees with basic information material to their employment relationship at the time of hiring, and to ensure that employees are given written and timely notice of any changes to basic information material to their employment. Codified at California Labor Code section 2810.5, the Wage Theft Prevention Act provides that at the time of hiring, an employer must provide written notice to employees of the rate(s) of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or otherwise, including any rates for overtime, the regular payday designated by the employer, and any allowances claims as part of the minimum wage, including meal or lodging allowances. Effective January 1, 2015, an employer's written notice pursuant to section 2810.5 must also include a statement that the employee may accrue and use sick leave; has a right to request and use accrued paid sick leave; may not be terminated or retaliated against for using or requesting the use of accrued paid sick leave; and has the right to file a complaint against an employer who retaliates.

HAWTHORN failed to provide Ms. Ortiz and other aggrieved employees written notice that lists all the requisite information set forth in Labor Code section 2810.5(a)(1)(A)-(C). Specifically, HAWTHORN failed to provide Ms. Ortiz and other aggrieved employees with the hourly rate(s) of pay, including the overtime rate(s) of pay, in violation of section 2810.5(a)(1)(A). Instead, the wage theft form that HAWTHORN provided to Ms. Ortiz is blank where the aforementioned wage information should be filled in. HAWTHORN's failure to provide Ms. Ortiz and other aggrieved employees with written notice of basic information regarding their employment with HAWTHORN is in violation of Labor Code section 2810.5.

Ms. Ortiz and other aggrieved employees are entitled to recover civil penalties, attorneys' fees, costs, and interest thereon, and seek injunctive relief to bring HAWTHORN into compliance with Labor Code section 2810.5, pursuant to Labor Code sections 2699(a), (f), and (k).

**California Labor Code § 558(a)**

California Labor Code section 558(a) provides "[a]ny employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid . . . . (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid . . . ." Labor Code section 558(c) provides that "[t]he civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law." HAWTHORN, at all relevant times, was an employer or person acting on behalf of an employer(s) who violated Ms. Ortiz's and other aggrieved employees' rights by violating various sections of the California Labor Code.

Accordingly, Ms. Ortiz seeks the remedies set forth in Labor Code section 558 for herself, the State of California, and all other aggrieved employees. Specifically, pursuant to PAGA, and in particular California Labor Code sections 1194.5, 2699(a), 2699(k), 2699.3(a), 2699.3(c), 2699.5, and 558, Ms. Ortiz, acting in the public interest as a private attorney general, seeks assessment and collection of

8

civil penalties and injunctive relief for herself, all other aggrieved employees, and the State of California against HAWTHORN for violations of California Labor Code sections 201, 202, 204, 226(a), 226.7, 510, 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, and 2810.5.

Therefore, on behalf of all aggrieved employees, Ms. Ortiz seeks all applicable civil penalties related to these violations of the California Labor Code pursuant to PAGA.

Thank you for your attention to this matter.  If you have any questions, please contact me at the phone number or address below:

> Alexander Lima
> Capstone Law APC
> 1875 Century Park East, Suite 1000
> Los Angeles, CA 90067
> (310) 556-4811

Best Regards,

Alexander Lima

Copy: HAWTHORN SENIOR LIVING, LLC (via U.S. Certified Mail)

9

Capstone Law, APC
1875 Century Park, East, 1000
Los Angeles, CA. 90067

CERTIFIED MAIL

9589 0710 5270 0211 5962 45

HAWTHORN
SENIOR LIVING, LLC
9310 NE VANCOUVER
MALL DR, STE 200
VANCOUVER, WA 98662

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse
   so that we can return the card to you.

HAWTHORN
SENIOR LIVING, LLC
9310 NE VANCOUVER
MALL DR, STE 200
VANCOUVER, WA 98662

9590 9402 8803 4005 5676 46

2. Article Number (Transfer from service label)

9589 0710 5270 0211 5962 45

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                              ☐ Agent
                               ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Mail
☐ Mail Restricted Delivery
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

**OFFICIAL USE**

9589 0710 5270 0211 5962 45

Certified Mail Fee
$
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)      $
☐ Return Receipt (electronic)    $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required       $
☐ Adult Signature Restricted Delivery $
Postage
$
Total Postage & Fees
$

HAWTHORN
SENIOR LIVING, LLC
9310 NE VANCOUVER
MALL DR, STE 200
VANCOUVER, WA 98662



**SENDER:** COMPLETE THIS SECTION

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.

HAWTHORN
SENIOR LIVING, LLC
9310 NE VANCOUVER
MALL DR, STE 200
VANCOUVER, WA 98662

9590 9402 8803 4005 5676 46

2. Article Number *(Transfer from service label)*

9589 0710 5270 0211 5962 45

PS Form 3811, July 2020 PSN 7530-02-000-9053

COMPLETE THIS SECTION ON DELIVERY

A. Signature

X Nol_____

☒ Agent
☐ Addressee

B. Received by *(Printed Name)*

Nolan Waters

C. Date of Delivery

8/18/25

Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☒ No

Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Mail
☐ Mail Restricted Delivery
(over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

Capstone
LAW APC

1875 Century Park East, Suite 1860
Los Angeles, California 90067
310.556.4811 Main | 310.943.0396 Fax

ANTHONY CASTILLO
310.712.8169 Direct
Anthony.Castillo@capstonelawyers.com

June 12, 2026

VIA ONLINE SUBMISSION

California Labor & Workforce Development Agency
ATTN: PAGA Administrator
(https://dir.govfa.net/412)

Subject:        *Rosario Ortiz v. Hawthorn Senior Living, LLC*
                *LWDA Case No. LWDA-CM-1118525-25– AMENDED NOTICE*

Dear PAGA Administrator:

This office represents Rosario Ortiz in connection with her claims under the California Labor Code. Ms. Ortiz was an employee of HAWTHORN SENIOR LIVING, LLC ("HAWTHORN").  We previously provided notice of Ms. Ortiz's claims to the California Labor and Workforce Development Agency ("LWDA") on August 13, 2025, and submitted the applicable filing fee pursuant to Labor Code section 2699.3(a)(1)(B).  This amended notice supplements Ms. Ortiz's prior LWDA notice and is intended to clarify the facts and theories supporting her claims and adds additional claims.

The employer may be contacted directly at the address below:

HAWTHORN SENIOR LIVING, LLC
9310 NE VANCOUVER MALL DR, STE 200
VANCOUVER, WA 98662

Ms. Ortiz intends to seek civil penalties, attorneys' fees, costs, and other available relief for violations of the California Labor Code, which are recoverable under sections 2698, *et seq.*, the Labor Code Private Attorneys General Act of 2004 ("PAGA").  Ms. Williams seeks relief on behalf of herself, the State of California, and other persons who are or were employed by HAWTHORN as a non-exempt, hourly paid employee in California and who received at least one wage statement ("aggrieved employees").  This letter is sent in compliance with the notice and reporting requirements of California Labor Code section 2699.3.

HAWTHORN employed Ms. Ortiz as an hourly paid, non-exempt employee from approximately September 2021 to May 2025.  Ms. Ortiz worked for HAWTHORN as a Housekeeper and Server at its Scholl Canyon Estates senior living community location in Glendale, California.  During her employment, Ms. Ortiz typically worked eight (8) hours or more per day and five (5) days per week. By the end of her employment, Ms. Ortiz was compensated approximately $19.00 per hour.  Her job

1

duties included, without limitation, serving meals to residents, cleaning the dining area, and performing housekeeping of residences.

HAWTHORN committed each of the following Labor Code violations against Ms. Ortiz, the facts and theories of which follow, making her an "aggrieved employee" pursuant to California Labor Code section 2699(c)(1):[1]

**<u>HAWTHORN's Company-Wide and Uniform Payroll and HR Practices</u>**

HAWTHORN SENIOR LIVING, LLC is a Delaware limited liability company and is a senior housing management company with over 70 independent and assisted living communities, with six (6) facilities in California. Upon information and belief, HAWTHORN maintains a single, centralized Human Resources (HR) department at its corporate headquarters in Vancouver, Washington, for all non-exempt, hourly paid employees working for HAWTHORN in California, including Ms. Ortiz and other aggrieved employees. At all relevant times, HAWTHORN issued and maintained uniform, standardized scheduling and timekeeping practices and procedures for all non-exempt, hourly paid employees in California, including Ms. Ortiz and other aggrieved employees, regardless of their location or position.

Upon information and belief, HAWTHORN maintains a centralized Payroll department at its corporate headquarters in Vancouver, Washington, which processes payroll for all non-exempt, hourly paid employees working for HAWTHORN in California, including Ms. Ortiz and other aggrieved employees. Further, HAWTHORN issues the same formatted wage statements in the same manner for all non-exempt, hourly paid employees working in California, including Ms. Ortiz and other aggrieved employees, irrespective of their location, position, or manner in which each employee's employment ended. In other words, HAWTHORN utilized the same methods and formulas when calculating wages due to Ms. Ortiz and other aggrieved employees in California.

**<u>Violation of California Labor Code §§ 510 and 1198 – Unpaid Overtime</u>**

California Labor Code sections 510 and 1198 and the applicable Industrial Welfare Commission ("IWC") Wage Order require employers to pay employees working more than eight (8) hours in a day or more than forty (40) hours in a workweek at the rate of time-and-one-half (1 ½) times the regular rate of pay for all hours worked in excess of eight (8) hours in a day or more than forty (40) hours in a workweek. The applicable IWC Wage Order further provides that employers are required to pay employees working more than twelve (12) hours in a day overtime compensation at a rate of two (2) times their regular rate of pay. An employee's regular rate of pay includes all remuneration for employment paid to, or on behalf of, the employee, including nondiscretionary bonuses and incentive pay.

---

[1] These facts, theories, and claims are based on Ms. Ortiz's experience and counsel's review of those records currently available relating to Ms. Ortiz's employment. Discovery conducted in litigation of wage and hour claims such as these often reveals additional claims that the aggrieved employee was not initially aware of (because the aggrieved employee was not aware of the law's requirements, the employer misinformed its employee of the law's requirements, or because the employer effectively hid the violations). Thus, Ms. Ortiz reserves the right to supplement this letter with additional facts, theories, and claims if she becomes aware of them subsequent to the submission of this letter.

HAWTHORN willfully failed to pay all overtime wages owed to Ms. Ortiz and other aggrieved employees. During the relevant time period, Ms. Ortiz and other aggrieved employees were not paid overtime premiums for all of the hours they worked in excess of eight (8) hours in a day, in excess of twelve (12) hours in a day, and/or in excess of forty (40) hours in a week, because all hours that they worked were not recorded.

First, during the relevant time period, HAWTHORN had, and continues to have, a company-wide policy and/or practice of discouraging and impeding Ms. Ortiz and other aggrieved employees from recording hours worked that were outside of their scheduled shifts in order to limit the amount of overtime employees could accrue. Specifically, HAWTHORN's managers pressured Ms. Ortiz and other aggrieved employees to record their scheduled shift start-times and shift end-times instead of their actual hours worked to limit the overtime hours employees were eligible to be compensated for. This policy of limiting overtime led Ms. Ortiz and other aggrieved employees to work off-the-clock before and after their scheduled shifts in order to complete their assigned tasks. For example, Ms. Ortiz and other aggrieved employees were required to change into and/or don their uniform items, which included specific uniform sets used for different assigned tasks (such as a uniform set for serving meals to residents and a different uniform set for housekeeping activities), on HAWTHORN's premises, before clocking in at the start of their shifts. As another example, after clocking out at the end of their shifts, Ms. Ortiz and other aggrieved employees were required to change out of and/or doff their uniform items, and drop them off in a designated area before they could go home for the day. However, HAWTHORN did not allow Ms. Ortiz and other aggrieved employees to report all of the time spent donning and doffing their uniforms at the beginning and end of their shifts despite being on HAWTHORN's premises and under HAWTHORN's control. As a result, Ms. Ortiz and other aggrieved employees were required to spend time donning and doffing their uniforms off-the-clock.

Second, HAWTHORN had, and continues to have, a company-wide policy and/or practice of understaffing its facilities. HAWTHORN's uniform practice of understaffing resulted in a failure to provide Ms. Ortiz and other aggrieved employees with adequate meal period coverage, because there were too few employees on duty to handle the workload and attend to residents, which included strictly adhering to residents' scheduled meals. Because HAWTHORN did not employ or staff a sufficient number of employees to handle the workload, there was no one available to relieve employees needing meal period coverage, and Ms. Ortiz and other aggrieved employees were not always afforded compliant 30-minute meal periods during shifts when they were entitled to receive a meal period. For example, Ms. Ortiz and other aggrieved employees were expected to clock out for the meal periods at 12:00 p.m. and clock back in at the end of their meal periods no later than 12:30 p.m., which was the time that lunches for residents were scheduled to begin. If Ms. Ortiz and other aggrieved employees were not ready to begin serving lunches at 12:30 p.m., their supervisors would reprimand them for not being ready. As a result, Ms. Ortiz would sometimes cut her meal period short by 5 to 7 minutes in order to meet her supervisors' expectation that she was ready to work and serve residents exactly at 12:30 p.m.

Further, HAWTHORN's management pressured Ms. Ortiz and other aggrieved employees to record compliant meal periods, even when they did not receive a compliant meal period. For example, on the occasions that Ms. Ortiz began her meal period after 12:00 p.m. and/or cut her meal short by 5 to 7 minutes at stated above, she was pressured to record that her meal period's duration was 30 minutes, even when she had to return early and resume working. Thus, HAWTHORN did not record all hours worked during meal periods and Ms. Ortiz and other aggrieved employees performed work during meal periods for which they were not paid.

3

Third, HAWTHORN expected Ms. Ortiz and other aggrieved employees to monitor their company-issued radios to communicate with supervisors at all times, which employees understood to include during their unpaid meal periods. Management never instructed Ms. Ortiz and other aggrieved employees to turn off or stop monitoring their company-issued radios while clocked out for their meal periods. For example, HAWTHORN's supervisors would contact Ms. Ortiz and other housekeeping employees on their radios to discuss work-related matters while clocked out for their meal period, but did not compensate them for this time. HAWTHORN knew or should have known that Ms. Ortiz and other aggrieved employees were being made to respond to management while off-the-clock and during meal periods in order to meet HAWTHORN's expectations, but failed to compensate them for this time worked. Further, on information and belief, HAWTHORN's expectation that employees monitor their radios at all times discouraged and impeded Ms. Ortiz and other aggrieved employees from leaving the work premises during their meal periods and thus were denied the ability to use their meal periods freely for their own purposes. Thus, HAWTHORN effectively maintained control over Ms. Ortiz and other aggrieved employees during their unpaid meal periods.

HAWTHORN knew or should have known that as a result of these company-wide practices and/or policies, Ms. Ortiz and other aggrieved employees were performing their assigned duties off-the-clock before and after their shifts and during meal periods, and were suffered or permitted to perform work for which they were not paid. Because Ms. Ortiz and other aggrieved employees worked shifts of eight (8) hours or more a day, or forty (40) hours a week or more, some of this off-the-clock work qualified for overtime premium pay. Therefore, Ms. Ortiz and other aggrieved employees were not paid overtime wages for all of the overtime hours they actually worked.

HAWTHORN's failure to pay Ms. Ortiz and other aggrieved employees the balance of overtime compensation, as required by California law, violates the provisions of California Labor Code sections 510 and 1198. Ms. Ortiz and other aggrieved employees are entitled to recover civil penalties, attorneys' fees, costs, and interest thereon, and seek injunctive relief to bring HAWTHORN into compliance with the applicable IWC Wage Order and Labor Code sections 510 and 1198, pursuant to Labor Code sections 558 and/or 2699(a), (f), and (k).

**Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 – Unpaid Minimum Wages**

California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 require employers to pay employees the minimum wage fixed by the IWC. The payment of a lesser wage than the minimum so fixed is unlawful. Compensable work time is defined in IWC Wage Order No. 5-2001 as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work for the employer, whether or not required to do so. . . ." Cal. Code Regs. Tit. 8, § 11050(2)(M) (defining "Hours Worked").

First, as set forth above, as a result of HAWTHORN's policies and/or practices of limiting the amount of overtime employees could accrue and pressuring employees to record only their scheduled hours in the timekeeping system rather than actual hours worked, HAWTHORN required Ms. Ortiz and other aggrieved employees to perform work off-the-clock before and after their scheduled shifts to complete work-related tasks, such as donning and doffing uniforms, including when they entered the premises before clocking in prior to a shift and when they exited the premises after clocking out at the end of a shift. HAWTHORN failed to track this time that Ms. Ortiz and other aggrieved

4

employees spent working off-the-clock, and Ms. Ortiz and other aggrieved employees received no compensation for this time.

Second, as also stated above, due to HAWTHORN's policies and/or practices of understaffing its facilities, requiring employees to strictly adhere to residents' scheduled lunches, requiring employees to monitor company-issued radios to respond to calls from supervisors at all times, and to effectively remain on work premises during meal periods, Ms. Ortiz and other aggrieved employees were prevented from taking all uninterrupted meal periods to which they were entitled and were required to work off-the-clock during meal periods, have their meal periods interrupted, and/or were otherwise not relieved of all duties during unpaid meal periods. Moreover, as stated, HAWTHORN pressured Ms. Ortiz and other aggrieved employees to record compliant meal periods, even when meal periods were missed, short, and/or interrupted. Thus, HAWTHORN systematically failed to pay Ms. Ortiz and other aggrieved employees for actual hours worked during unpaid meal periods because these hours were not always correctly recorded.

HAWTHORN did not pay at least minimum wages for all hours worked by Ms. Ortiz and other aggrieved employees. To the extent that these off-the-clock hours did not qualify for overtime premium payment, HAWTHORN did not pay at least minimum wages for those hours worked off-the-clock in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198.

Accordingly, HAWTHORN regularly failed to pay at least minimum wages to Ms. Ortiz and other aggrieved employees for all of the hours they worked in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198. Ms. Ortiz and other aggrieved employees are entitled to recover civil penalties, attorneys' fees, costs, and interest thereon, and seek injunctive relief to bring HAWTHORN into compliance with the applicable IWC Wage Order and Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198, pursuant to Labor Code sections 1197.1 and/or 2699(a), (f), and (k).

**Violation of California Labor Code §§ 226.7, 512(a), 516, and 1198 – Failure to Provide Meal Periods**

California Labor Code sections 226.7, 512(a), 516, and 1198, and the applicable IWC Wage Order require employers to provide meal periods and to pay an employee one (1) additional hour of pay at the employee's regular rate for each work day that a meal or rest period is not provided. Pursuant to Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order, an employer may not require, cause or permit an employee to work for a period of more than five (5) hours per day without providing the employee with an uninterrupted meal period of not less than thirty (30) minutes, except that if the total work period per day of the employee is not more than six (6) hours, the meal period may be waived by mutual consent of both the employer and the employee. Under California law, first meal periods must start after no more than five hours. *Brinker Rest. Corp. v. Superior Court*, 53 Cal.4th 1004, 1041-1042 (2012). Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order also require employers to provide a second meal period of not less than thirty (30) minutes if an employee works over ten (10) hours per day or to pay an employee one (1) additional hour of pay at the employee's regular rate, except that if the total hours worked is no more than twelve (12) hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

First, as stated, HAWTHORN had, and continues to have, a company-wide policy and/or practice of understaffing its facilities, which resulted in a failure to provide Ms. Ortiz and other aggrieved

5

employees with adequate meal period coverage.  As a result, Ms. Ortiz and other aggrieved employees had to work through all or part of their meal periods, had their meal periods interrupted, and/or had to wait extended periods of time before taking meal periods because there were too few employees on duty to handle the workload and attend to residents, which included strictly adhering to residents' scheduled meals.  For example, as stated, Ms. Ortiz would sometimes cut her meal period short by 5 to 7 minutes in order to meet her supervisors' expectation that she was ready to work and serve resident lunches at exactly 12:30 p.m.

Additionally, HAWTHORN only provided Ms. Ortiz and other aggrieved employees with one (1) timekeeping machine to clock in and out for their shifts and meal periods, thus forcing Ms. Ortiz and other aggrieved employees to cut their meals short in order to clock back in at the end of their meals.  For instance, the timekeeping machine was located in the facility's office, which was located on the first floor, and the employee dining room was located on the fourth floor.  Sometimes the facility's elevator was either malfunctioning or otherwise unavailable, which forced Ms. Ortiz to either wait for the elevator to become available or take the stairs, which could take 3-4 minutes to reach the office.  And because her supervisor expected employees to be ready to serve residents at 12:30 p.m., Ms. Ortiz was forced to cut her meal periods short by 5 to 7 minutes in order for her to be able to clock in on the first floor and take the elevator or stairs to the third floor, where she was assigned to work.

Second, as set forth above, because HAWTHORN frowned upon employees accruing meal period premiums, HAWTHORN's management pressured Ms. Ortiz and other aggrieved employees to record compliant meal periods regardless of whether they had received a compliant meal period or not, in order to strictly limit the meal period premiums that would need to be paid by HAWTHORN.  For example, as stated, Ms. Ortiz was required to record that she had received compliant meal periods on shifts when she had not, in fact, received these shortened or uninterrupted meal periods.

Third, as stated, HAWTHORN expected Ms. Ortiz and other aggrieved employees to monitor their company-issued radios to communicate with supervisors at all times, and did not instruct Mr. Ortiz and other aggrieved employees to turn off their radios during meal periods.  For example, HAWTHORN's supervisors would contact Ms. Ortiz and other housekeeping employees on their radios while clocked out for their meal period to discuss work-related matters.  Further, on information and belief, HAWTHORN's expectation that employees carry their radios at all times discouraged and impeded Ms. Ortiz and other aggrieved employees from leaving the work premises during their meal periods and thus employees were denied the ability to use their meal periods freely for their own purposes.  Thus, HAWTHORN effectively maintained control over Ms. Ortiz and other aggrieved employees during their meal periods.

Fourth, during the relevant time period, HAWTHORN maintained a company-wide, unlawful written meal period policy insofar as it fails to correctly state the timing of when meal periods must occur.  Under California law, first meal periods must start after no more than five hours of work.  *Brinker*, 53 Cal.4th at 1041-1042.  However, HAWTHORN's "Time-Clock Work Rules" section in its "Memorandum RE: Performance Standards" dated December 18, 2019, states, in part: "[a]ll full-time employees working more than a 6-hour shift are required by Company policy to take a 30-minute meal period."  HAWTHORN's written policy fails to state the correct timing of when the first meal period must take place (i.e., within the first five (5) hours of work) under California law and is therefore facially invalid.  Furthermore, HAWTHORN's non-compliant written meal period policy also fails to mention that employees are entitled to a second 30-minute meal period when working shifts in excess of ten (10) hours.

6

Fifth, HAWTHORN did not provide Ms. Ortiz and other aggrieved employees with second 30-minute meal periods on days that they worked in excess of 10 hours in one day.  For example, during the relevant time period, Ms. Ortiz sometimes worked shifts in excess of 10 hours in one day and did not take a second meal period.  Ms. Ortiz and other aggrieved employees did not sign valid meal period waivers on days that they were entitled to meal periods and were not relieved of all duties.

At all times mentioned herein, HAWTHORN knew or should have known that as a result of its company-wide policies and/or practices, Ms. Ortiz and other aggrieved employees were prevented from being relieved of all duties and were required to perform some of their assigned duties during meal periods.  HAWTHORN further knew or should have known that it did not pay Ms. Ortiz and other aggrieved employees all meal period premiums when meal periods were missed, late, interrupted, and/or shortened.

Furthermore, HAWTHORN engaged in a company-wide practice and/or policy of not paying meal period premiums owed when compliant meal periods were not provided.  Because of this practice and/or policy, Ms. Ortiz and other aggrieved employees have not received all premium pay for missed, interrupted, late and/or shortened meal periods.

Accordingly, HAWTHORN failed to provide all meal periods in violation of California Labor Code sections 226.7, 512(a), 516, and 1198.  Ms. Ortiz and other aggrieved employees are entitled to recover civil penalties, attorneys' fees, costs, and interest thereon, and seek injunctive relief to bring HAWTHORN into compliance with the applicable IWC Wage Order and Labor Code sections 226.7, 512(a), 516, and 1198, pursuant to Labor Code sections 558 and/or 2699(a), (f), and (k).

**<u>Violation of California Labor Code §§ 226.7, 516, and 1198 – Failure to Authorize and Permit Rest Periods</u>**

California Labor Code sections 226.7, 516, and 1198 and the applicable IWC Wage Order require employers to provide rest periods and to pay an employee one (1) additional hour of pay at the employee's regular rate for each work day that a meal or rest period is not provided.  California Labor Code section 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC.  The applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily work time is less than three and one-half (3 ½) hours.

To comply with its obligation to authorize and permit rest periods under California Labor Code section 226.7 and the applicable IWC Wage Order, an employer must "relinquish any control over how employees spend their break time, and relieve their employees of all duties—including the obligation that an employee remain on call.  A rest period, in short, must be a period of rest." *Augustus, et al. v. ABM Security Services, Inc.*, 2 Cal.5th 257, 273 (2016).

During the relevant time period, HAWTHORN regularly failed to authorize and permit Ms. Ortiz and other aggrieved employees to take a ten (10) minute rest period per each four (4) hour period worked or major fraction thereof.  As with meal periods, HAWTHORN's company-wide practices of understaffing, assigning heavy workloads, and/or requiring employees to monitor their company-issued radios at all times, resulted in a lack of rest period coverage and prevented Ms. Ortiz and other

aggrieved employees from being relieved of all duty in order to take compliant rest periods.  For example, Ms. Ortiz's rest periods were interrupted 1-2 times per week by her manager to discuss work-related issues such as resident complaints.

Furthermore, HAWTHORN maintained and implemented, on a company-wide basis, a non-compliant written on-premises rest period policy, that required that Ms. Ortiz and other aggrieved employees remain on the work premises during their rest periods and prevented Ms. Ortiz and other aggrieved employees from taking compliant rest periods.  Specifically, HAWTHORN's "Time-Clock Work Rules" section in its "Memorandum RE: Performance Standards" dated December 18, 2019, states, in relevant part, "[i]f you leave the Community while on duty for any reason other than your 30-minute meal period, you ***must seek*** managerial approval when you leave the building and you ***must also notify*** a member of the Management Team when you return to work . . . ."  (Emphasis in original.)  However, under California law, an employer must relinquish any control over how the employees spend their rest period time.  Thus, HAWTHORN's written rest period policy is non-compliant on its face, as it fails to relinquish control over how employees spend their rest periods.  Further, because Ms. Ortiz and other aggrieved employees were restricted from leaving the premises during rest periods, they were denied the ability to use their rest periods freely for their own purposes, such as running personal errands.  Thus, HAWTHORN effectively maintained control over Ms. Ortiz and other aggrieved employees during rest periods.

As a result of HAWTHORN's practices and policies, Ms. Ortiz and other aggrieved employees worked shifts in excess of 3.5 hours, in excess of 6 hours, and/or in excess of 10 hours without receiving all uninterrupted rest periods to which they were entitled.

HAWTHORN also has engaged in a company-wide practice and/or policy of not paying rest period premiums owed when compliant rest periods are not authorized and permitted.  Because of this practice and/or policy, Ms. Ortiz and other aggrieved employees have not received premium pay for all non-compliant rest periods.

Accordingly, HAWTHORN failed to authorize and permit all rest periods in violation of California Labor Code sections 226.7, 516, and 1198.  Ms. Ortiz and other aggrieved employees are entitled to recover civil penalties, attorneys' fees, costs, and interest thereon, and seek injunctive relief to bring HAWTHORN into compliance with the applicable IWC Wage Order and Labor Code sections 226.7, 516, and 1198, pursuant to Labor Code sections 558 and/or 2699(a), (f), and (k).

**Violation of California Labor Code §§ 226(a), 1174(d), and 1198 – Non-Compliant Wage Statements and Failure to Maintain Accurate Payroll Records**

California Labor Code section 226(a) requires employers to make, keep and provide true, accurate, and complete employment records.  HAWTHORN has not provided Ms. Ortiz and other aggrieved employees with properly itemized wage statements.  Labor Code section 226(e) provides that if an employer fails to comply with providing an employee with properly itemized wage statements as set forth in 226(a), then the employee is entitled to recover the greater of all actual damages or $50 for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period, not to exceed $4,000.  Further, Labor Code section 226.3 provides that any employer who violates section 226(a) shall be subject to a civil penalty in the amount of $250 per employee per violation in an initial citation and $1,000 per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage statement or fails to keep the required records pursuant to Section 226(a).

During the relevant time period, HAWTHORN has knowingly and intentionally provided Ms. Ortiz and other aggrieved employees with uniform, incomplete, and inaccurate wage statements.  For example, HAWTHORN issued uniform wage statements to Ms. Ortiz and other aggrieved employees that fail to correctly list: gross wages earned; total hours worked; net wages earned; and all applicable hourly rates in effect during the pay period, including rates of pay for overtime wages, and the corresponding number of hours worked at each hourly rate.  Specifically, HAWTHORN violated sections 226(a)(1), 226(a)(2), 226(a)(5), and 226(a)(9).

Because HAWTHORN did not accurately record the time Ms. Ortiz and other aggrieved employees spent working off-the-clock and deducted time from their records for meal periods that were interrupted and/or missed (and therefore time for which they should have been paid), HAWTHORN did not list the correct amount of gross wages and net wages earned by Ms. Ortiz and other aggrieved employees in compliance with section 226(a)(1) and section 226(a)(5), respectively.  For the same reason, HAWTHORN failed to accurately list the total number of hours worked by Ms. Ortiz and other aggrieved employees, in violation of section 226(a)(2), and failed to list the applicable hourly rates of pay in effect during the pay period and the corresponding accurate number of hours worked at each hourly rate, in violation of section 226(a)(9).

The wage statement deficiencies also include, among other things, failing to list the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; failing to list all deductions; failing to list the inclusive dates of the period for which aggrieved employees were paid; failing to list the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number; failing to list the name and address of the legal entity that is the employer; and/or failing to state all hours worked as a result of not recording or stating hours worked off-the-clock.

California Labor Code section 1174(d) provides that "[e]very person employing labor in this state shall . . . [k]eep a record showing the names and addresses of all employees employed and the ages of all minors" and "[k]eep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments . . . ."  Labor Code section 1174.5 provides that employers are subject to a $500 civil penalty if they fail to maintain accurate and complete records as required by section 1174(d).  During the relevant time period, and in violation of Labor Code section 1174(d), HAWTHORN willfully failed to maintain accurate payroll records for Ms. Ortiz and other aggrieved employees showing the daily hours they worked and the wages paid thereto as a result of failing to record the off-the-clock hours that they worked.

California Labor Code section 1198 provides that the maximum hours of work and the standard conditions of labor shall be those fixed by the Labor Commissioner and as set forth in the applicable IWC Wage Order.  Section 1198 further provides that "[t]he employment of any employees for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful."  Pursuant to the applicable IWC Wage Order, employers are required to keep accurate time records showing when the employee begins and ends each work period and meal period.  During the relevant time period, HAWTHORN engaged in company-wide practices and/or policies of failing to record actual hours worked and thereby failed to keep accurate records of work period and meal period start and end times for Ms. Ortiz and other aggrieved employees, in violation of section 1198.  Furthermore, in light of HAWTHORN's failure to provide Ms. Ortiz and other

9

aggrieved employees with second 30-minute meal periods to which they were entitled, HAWTHORN kept no records of meal start and end times for second meal periods.

Because HAWTHORN failed to provide the correct net and gross wages earned, applicable rates of pay, and number of total hours worked on wage statements, Ms. Ortiz and other aggrieved employees have been prevented from verifying, solely from information on the wage statements themselves, that they were paid correctly and in full.  Instead, Ms. Ortiz and other aggrieved employees have had to look to sources outside of the wage statements themselves and reconstruct time records to determine whether in fact they were paid correctly and the extent of underpayment, thereby causing them injury.

Ms. Ortiz and other aggrieved employees are entitled to recover civil penalties, attorneys' fees, costs, and interest thereon, and seek injunctive relief to bring HAWTHORN into compliance with the applicable IWC Wage Order and Labor Code sections 226(a), 1174(d), and 1198, pursuant to Labor Code sections 226.3, 1174.5, and/or 2699(a), (f), and (k).

### Violation of California Labor Code § 204 – Failure to Timely Pay Wages During Employment

California Labor Code section 204 requires that all wages earned by any person in any employment between the 1st and the 15th days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 16th and the 26th day of the month during which the labor was performed, and that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month.  California Labor Code section 204 also requires that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period. Alternatively, California Labor Code section 204 provides that the requirements of this section are deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven (7) calendar days following the close of the payroll period.

During the relevant time period, HAWTHORN failed to pay Ms. Ortiz and other aggrieved employees all wages due to them, including, but not limited to, overtime wages, minimum wages, and/or meal and rest period premiums, within any time period specified by California Labor Code section 204.

Ms. Ortiz and other aggrieved employees are entitled to recover civil penalties, attorneys' fees, costs, and interest thereon, and seek injunctive relief to bring HAWTHORN into compliance with Labor Code section 204, pursuant to Labor Code sections 210 and/or 2699(a), (f), and (k).

### Violation of California Labor Code §§ 201 and 202 – Failure to Timely Pay Final Wages Upon Termination

California Labor Code sections 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

10

HAWTHORN had a company-wide practice and/or policy of paying departing employees their final wages late, instead of adhering to the time requirements set forth in Labor Code sections 201 and 202. For example, HAWTHORN terminated Ms. Ortiz on May 5, 2025; however, HAWTHORN did not provide Ms. Ortiz with her final wages until May 6, 2025. Thus, HAWTHORN failed to pay Ms. Ortiz her final wages immediately, in violation of California Labor code section 201.

HAWTHORN willfully failed to pay Ms. Ortiz and other aggrieved employees who are no longer employed by HAWTHORN the earned and unpaid wages set forth above, including but not limited to, overtime wages, minimum wages, and/or meal and rest period premiums, either at the time of discharge, or within seventy-two (72) hours of their leaving HAWTHORN's employ.

Ms. Ortiz and other aggrieved employees are entitled to recover civil penalties, attorneys' fees, costs, and interest thereon, and seek injunctive relief to bring HAWTHORN into compliance with Labor Code sections 201 and 202, pursuant to Labor Code sections 256 and/or 2699(a), (f), and (k).

**<u>Violation of California Labor Code § 2802 – Unreimbursed Business Expenses</u>**

California Labor Code section 2802 requires employers to pay for all necessary expenditures and losses incurred by the employee in the performance of his or her job. The purpose of Labor Code section 2802 is to prevent employers from passing off their cost of doing business and operating expenses on to their employees. *Cochran v. Schwan's Home Service, Inc.*, 228 Cal.App.4th 1137, 1144 (2014). The applicable wage order, IWC Wage Order No. 5-2001, provides that: "[w]hen tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft." IWC Wage Order No. 5-2001 also provides that: "[w]hen uniforms are required by the employer to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the employer."

First, during the relevant time period, HAWTHORN, on a company-wide basis, required that Ms. Ortiz and other aggrieved employees use their personal mobile devices, including, but not limited to, cellular phones, and/or mobile data to carry out their job duties but failed to reimburse them for the costs of their work-related mobile device and/or mobile data expenses. For example, Ms. Ortiz was required to use her personal cellular phone to communicate with her supervisor regarding training tests and shift scheduling. Although HAWTHORN required Ms. Ortiz and other aggrieved employees to use their personal mobile devices and mobile data to carry out their work-related duties, HAWTHORN failed to reimburse them for their costs incurred.

Second, during the relevant time period, HAWTHORN required Ms. Ortiz and other aggrieved employees to wear uniform shirts bearing the Hawthorn Senior Living logo. However, due to the nature of residential care work, Ms. Ortiz's and other aggrieved employees' uniforms would become sweaty, stained, or soiled such that they were unable to mix these clothes in with other laundry. As a result, they had to wash their uniform items separately from their other clothing items, thus incurring additional utility and laundry expenses for the upkeep of their uniforms. Thus, HAWTHORN failed to maintain the uniforms it required Ms. Ortiz and other aggrieved employees to wear during their shifts and forced them to incur the cost of maintaining employee uniforms.

11

Third, during the relevant time period, HAWTHORN required Ms. Ortiz and other aggrieved employees to wear specialty footwear such as non-skid or non-slip shoes, which they were required to wear while at work and necessary for the performance of their duties.  For example, Ms. Ortiz spent approximately $120 on two (2) pairs of non-skid or non-slip shoes, but she was not reimbursed for these costs.  Thus, HAWTHORN failed to provide or reimburse Ms. Ortiz and other aggrieved employees for the specialty footwear it required employees to wear during their shifts.

HAWTHORN could have provided Ms. Ortiz and other aggrieved employees with the actual equipment for use on the job, such as company mobile devices and specialty footwear as well as access to laundering services.  Or, HAWTHORN could have reimbursed employees for the costs of their mobile device usage, specialty footwear, and laundering expenses or provided a uniform maintenance allowance.  Instead, HAWTHORN passed these operating costs onto Ms. Ortiz and other aggrieved employees.  At all relevant times, Ms. Ortiz did not earn at least two (2) times the minimum wage.

Thus, HAWTHORN had, and continues to have, a company-wide policy and/or practice of not reimbursing employees for expenses necessarily incurred in violation of California Labor Code section 2802.  Ms. Ortiz and other aggrieved employees are entitled to recover civil penalties, attorneys' fees, costs, and interest thereon, and seek injunctive relief to bring HAWTHORN into compliance with the applicable IWC Wage Order and Labor Code section 2802, pursuant to Labor Code sections 2699(a), (f), and (k).

### Violation of California Labor Code § 2810.5(a)(1)(A)-(C) – Failure to Provide Notice of Material Terms of Employment

California's Wage Theft Prevention Act was enacted to ensure that employers provide employees with basic information material to their employment relationship at the time of hiring, and to ensure that employees are given written and timely notice of any changes to basic information material to their employment.  Codified at California Labor Code section 2810.5, the Wage Theft Prevention Act provides that at the time of hiring, an employer must provide written notice to employees of the rate(s) of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or otherwise, including any rates for overtime, the regular payday designated by the employer, and any allowances claims as part of the minimum wage, including meal or lodging allowances.  Effective January 1, 2015, an employer's written notice pursuant to section 2810.5 must also include a statement that the employee may accrue and use sick leave; has a right to request and use accrued paid sick leave; may not be terminated or retaliated against for using or requesting the use of accrued paid sick leave; and has the right to file a complaint against an employer who retaliates.

HAWTHORN failed to provide Ms. Ortiz and other aggrieved employees written notice that lists all the requisite information set forth in Labor Code section 2810.5(a)(1)(A)-(C).  Specifically, HAWTHORN failed to provide Ms. Ortiz and other aggrieved employees with the hourly rate(s) of pay, including the overtime rate(s) of pay, in violation of section 2810.5(a)(1)(A).  Instead, the wage theft form that HAWTHORN provided to Ms. Ortiz is blank where the aforementioned wage information should be filled in.  HAWTHORN's failure to provide Ms. Ortiz and other aggrieved employees with written notice of basic information regarding their employment with HAWTHORN is in violation of Labor Code section 2810.5.

12

Ms. Ortiz and other aggrieved employees are entitled to recover civil penalties, attorneys' fees, costs, and interest thereon, and seek injunctive relief to bring HAWTHORN into compliance with Labor Code section 2810.5, pursuant to Labor Code sections 2699(a), (f), and (k).

**California Labor Code § 558(a)**

California Labor Code section 558(a) provides "[a]ny employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid . . . .  (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid . . . ."  Labor Code section 558(c) provides that "[t]he civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law."  HAWTHORN, at all relevant times, was an employer or person acting on behalf of an employer(s) who violated Ms. Ortiz's and other aggrieved employees' rights by violating various sections of the California Labor Code.

Accordingly, Ms. Ortiz seeks the remedies set forth in Labor Code section 558 for herself, the State of California, and all other aggrieved employees.  Specifically, pursuant to PAGA, and in particular California Labor Code sections 1194.5, 2699(a), 2699(k), 2699.3(a), 2699.3(c), 2699.5, and 558, Ms. Ortiz, acting in the public interest as a private attorney general, seeks assessment and collection of civil penalties and injunctive relief for herself, all other aggrieved employees, and the State of California against HAWTHORN for violations of California Labor Code sections 201, 202, 204, 226(a), 226.7, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, and 2810.5.

Therefore, on behalf of all aggrieved employees, Ms. Ortiz seeks all applicable civil penalties related to these violations of the California Labor Code pursuant to PAGA.

Thank you for your attention to this matter.  If you have any questions, please contact me at the phone number or address below:

> Anthony Castillo
> Capstone Law APC
> 1875 Century Park East, Suite 1860
> Los Angeles, CA 90067
> (310) 556-4811

Best Regards,

Anthony Castillo

Copy: HAWTHORN SENIOR LIVING, LLC (via U.S. Certified Mail); SEYFARTH SHAW LLP Justin T. Curley, Esq. Mission Street, 31st Floor, San Francisco, CA 94105(via U.S. Certified Mail); SEYFARTH SHAW LLP Jeffrey A. Nordlander, Esq. Capitol Mall, Suite 2300, Sacramento, CA 95814 (via U.S. Certified Mail)

13

Capstone Law, APC
1875 Century Park, East, 1860
Los Angeles, CA. 90067

CERTIFIED MAIL

9589 0710 5270 2512 5100 98

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)       $ _____
☐ Return Receipt (electronic)     $ _____
☐ Certified Mail Restricted ...

ORNZU.
HAWTHORN

Postmark

PS Form 3800, January 2023 PSN 7530-02-000-9047    See Reverse for instructions

HAWTHORN SENIOR LIVING, LLC
9310 NE VANCOUVER
MALL DR, STE 200
VANCOUVER, WA 98662

HAWTHORN SENIOR LIVING, LLC
9310 NE VANCOUVER
MALL DR, STE 200
VANCOUVER, WA 98662

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY | |
|---|---|---|
| ■ Complete items 1, 2, and 3. ■ Print your name and address on the reverse so that we can return the card to you. ■ Attach this card to the back of the mailpiece | A. Signature X | ☐ Agent ☐ Addressee |
| HAWTHORN SENIOR LIVING, LLC 9310 NE VANCOUVER MALL DR, STE 200 VANCOUVER, WA 98662 | B. Received by (Printed Name) | C. Date of Delivery |
| | D. Is delivery address different from item 1? ☐ Yes If YES, enter delivery address below: ☐ No | |
| | Service Type ☐ Adult Signature ☐ Adult Signature Restricted Delivery ☑ Certified Mail® ☐ Certified Mail Restricted Delivery ☐ Collect on Delivery ☐ Collect on Delivery Restricted Delivery ☐ ... Restricted Delivery (over $500) | ☐ Priority Mail Express® ☐ Registered Mail™ ☐ Registered Mail Restricted Delivery ☐ Signature Confirmation™ ☐ Signature Confirmation Restricted Delivery |

2. Article Number (Transfer from service label)

9589 0710 5270 2512 5100 98

PS Form 3811, July 2020 PSN 7530-02-000-9053          Domestic Return Receipt

Capstone Law, APC
1875 Century Park, East, 1860
Los Angeles, CA. 90067

9589 0710 5270 2512 5100 81

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)          $
☐ Return Receipt (electronic)        $
☐ Certified Mail

Postage
$

Total
$

Sent

Street

City, S

ORMV.
HAWTHORNE

SEYFARTH SHAW LLP
Justin T. Curley, Esq.
Mission Street, 31st Floor
San Francisco, CA 94105

PS Form 3800, January 2023 PSN 7530-02-000-9047    See Reverse for Instructions

SEYFARTH SHAW LLP
Justin T. Curley, Esq.
Mission Street, 31st Floor
San Francisco, CA 94105

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece,

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                     ☐ Agent
                                      ☐ Addressee

B. Received by *(Printed Name)*     C. Date of Delivery

D. Is delivery address different from Item 1?  ☐ Yes
If YES, enter delivery address below:          ☐ No

SEYFARTH SHAW LLP
Justin T. Curley, Esq.
Mission Street, 31st Floor
San Francisco, CA 94105

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Restricted Delivery
(over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

2. 9589 0710 5270 2512 5100 81

PS Form 3811, July 2020 PSN 7530-02-000-9053          Domestic Return Receipt

Case 2:25-cv-03045-DAD-SCR   Document 10   Filed 07/07/26   Page 72 of 73

Capstone Law, APC
1875 Century Park, East, 1860
Los Angeles, CA. 90067

9589 0710 5270 2639 6038 64

**CERTIFIED MAIL**

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee
$
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)          $
☐ Ret___
☐ Ce___
☐ Ad___
☐ Ad___
Posta___
$
Total F___
$
Sent T___
Street
City, S___

ORTZ V.
HAWTHRN

SEYFARTH SHAW LLP
Jeffrey A. Nordlander, Esq.
Capitol Mall, Suite 2300
Sacramento, CA 95814

PS Form 3800, January 2023 PSN 7530-02-000-9047    See Reverse for Instructions

9589 0710 5270 2639 6038 64

SEYFARTH SHAW LLP
Jeffrey A. Nordlander, Esq.
Capitol Mall, Suite 2300
Sacramento, CA 95814

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece,

SEYFARTH SHAW LLP
Jeffrey A. Nordlander, Esq.
Capitol Mall, Suite 2300
Sacramento, CA 95814

A. Signature
X                                   ☐ Agent
                                    ☐ Addressee
B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

Service Type
Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
___ricted Delivery
(over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

2. A___

9589 0710 5270 2639 6038 64

PS Form 3811, July 2020 PSN 7530-02-000-9053                    Domestic Return Receipt

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece

HAWTHORN SENIOR LIVING, LLC
9310 NE VANCOUVER
MALL DR, STE 200
VANCOUVER, WA 98662

2. Article Number (Transfer from service label)
9589 0710 5270 2512 5100 98

PS Form 3811, July 2020 PSN 7530-02-000-9053

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X _____ ☐ Agent   ☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ___ Restricted Delivery
(over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt